1  Rachel M. Dollar, CSB 199977
   SMITH DOLLAR PC
2  Attorneys at Law
   404 Mendocino Avenue, Second Floor
3  Santa Rosa, California 95401
   Telephone: (707) 522-1100
4  Facsimile: (707) 522-1101
   Email: rdollar@smithdollar.com

5

6  Attorneys for Defendant Aurora Loan Services, LLC,
   erroneously sued as Aurora Loan Services,
   a Lehman Brothers Company

7

8                    UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10 | SCOTT K. ZIMMERMAN, JUDY A. ZIMMERMAN, | CASE NO.: C 08-3731 MHP |
|---|---|
| 11 | | NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND TO STRIKE PUNITIVE DAMAGES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; DECLARATION OF KATHY JARBOE IN SUPPORT THEREOF; PROPOSED ORDER |
| 12 | Plaintiffs, | |
| | v. | |
| 13 | | |
| 14 | AURORA LOAN SERVICES, A LEHMAN BROTHERS COMPANY, a business entity; DIABLO FUNDING GROUP INCORPORATED, a California corporation; FIRST AMERICAN LOANSTAR, a business entity form unknown; AND ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' TITLE OR ANY CLOUD ON PLAINTIFFS' TITLE THERETO, and Does 1 through 50, inclusive, | [FRCP 12(B) (6) AND (F)] |
| 15 | | |
| 16 | | Judge: Marilyn H. Patel |
| 17 | | Date:   October 6, 2008 Time:   2:00 p.m. Dept:   15, 18th Floor |
| 18 | | |
| 19 | | Action Filed: July 21, 2008 |
| 20 | | |
| 21 | Defendants. | |

22

23            TO EACH PARTY AND TO COUNSEL OF RECORD FOR EACH PARTY:

24            YOU ARE HEREBY NOTIFIED THAT on October 6, 2008 at 2:00 p.m., in Department 15

25 of this Court, located at 450 Golden Gate Avenue, 18th Floor, San Francisco, CA, Defendant Aurora

26 Loan Services, LLC, ("Aurora") will move the Court to dismiss Plaintiffs' Complaint and/or to

27 strike Plaintiffs' request for punitive damages therein. The Motion is made and based upon <u>Federal</u>

28 <u>Rules of Civil Procedure</u> 12(b) (6) and (f) on the grounds that Plaintiffs' Complaint (the

- 1 -

1  "Complaint") fails to state a claim against Aurora and/or one or more of these claims is barred as a

2  matter of law, and the request for punitive damages should be stricken.

3        The motion will be based on this Notice, the attached Memorandum of Points and

4  Authorities, the Declaration of Cathy Jarboe and upon all pleadings, papers and documents on file

5  herein, as well as any oral argument which my be presented at the time of hearing or any matters of

6  which judicial notice is requested and/or has been taken previously in this case.

7  Dated:  August 26, 2008

8

9                              SMITH DOLLAR PC

10

11                          By____/S/_____
                                Rachel M. Dollar
12                              Attorneys for Defendant Aurora Loan Services,
                                LLC, erroneously sued as Aurora Loan Services,
13                              a Lehman Brothers Company

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Notice of Motion and Motion to Dismiss and to Strike Punitive Damage Claim



1   Rachel M. Dollar, CSB 199977
    SMITH DOLLAR PC
2   Attorneys at Law
    404 Mendocino Avenue, Second Floor
3   Santa Rosa, California 95401
    Telephone:  (707) 522-1100
4   Facsimile:  (707) 522-1101
    Email:  rdollar@smithdollar.com
5
    Attorneys for Defendant Aurora Loan Services, LLC,
6   erroneously sued as Aurora Loan Services,
    a Lehman Brothers Company
7

8               UNITED STATES DISTRICT COURT

9       NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10  SCOTT K. ZIMMERMAN, JUDY A.           CASE NO.:  C 08-3731 MHP
    ZIMMERMAN,
11                                         MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF MOTION
                             Plaintiffs,   TO DISMISS COMPLAINT AND TO
12                                         STRIKE PUNITIVE DAMAGES CLAIM
    v.
13                                         [FRCP 12(B)(6) AND (F)]
    AURORA LOAN SERVICES, A LEHMAN
14  BROTHERS COMPANY, a business entity;   Judge:  Marilyn H. Patel
    DIABLO FUNDING GROUP
15  INCORPORATED, a California corporation; Date:    October 6, 2008
    FIRST AMERICAN LOANSTAR, a business    Time:    2:00 p.m.
16  entity form unknown; AND ALL PERSONS   Dept:    15, 18th Floor
    UNKNOWN CLAIMING ANY LEGAL OR
17  EQUITABLE RIGHT, TITLE, ESTATE, LIEN   Action Filed:  July 21, 2008
    OR INTEREST IN THE PROPERTY
18  DESCRIBED IN THE COMPLAINT
    ADVERSE TO PLAINTIFFS' TITLE OR ANY
19  CLOUD ON PLAINTIFFS' TITLE THERETO,
    and Does 1 through 50, inclusive,
20
                             Defendants.
21

22

23

24

25

26

27

28



1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION..................................................................................................1

II.   SUMMARY OF ARGUMENT ..........................................................................1

3

      A.    UNDERLYING FACTS ............................................................................2

4

      B.    RELEVANT PROCEDURAL HISTORY...............................................2

III.  ARGUMENT .....................................................................................................2

5

      A.    STANDARD ON MOTION TO DISMISS .............................................2

6

      B.    JUDY ZIMMERMAN LACKS STANDING TO PROSECUTE THE
            COMPLAINT: SHE WAS NOT A BORROWER ON THE

7

            SUBJECT LOAN NOR A PARTY TO THE REPAYMENT
            AGREEMENTS. ........................................................................................3

8

      C.    PLAINTIFFS' FIRST CAUSE OF ACTION TO SET ASIDE THE
            TRUSTEE'S SALE AND SECOND CAUSE OF ACTION TO

9

            CANCEL THE TRUSTEE'S DEED FAIL AS A MATTER OF

10

            LAW...........................................................................................................4

            1.    PLAINTIFF HAS NOT PLED SUFFICIENT

11

                  PROCEDURAL IRREGULARITY TO OVERCOME THE
                  PRESUMPTION OF REGULARITY OF THE TRUSTEE'S

12

                  SALE. ..............................................................................................4

13

            2.    THE TENDER RULE BARS PLAINTIFFS' CHALLENGE
                  TO THE TRUSTEE'S SALE .........................................................5

14

      D.    PLAINTIFFS' THIRD CAUSE OF ACTION FOR QUIET TITLE
            MUST FAIL BECAUSE PLAINTIFFS CANNOT DEMONSTRATE

15

            THAT PLAINTIFFS HAVE SUPERIOR TITLE IN THE
            PROPERTY TO AURORA. ......................................................................6

16

      E.    PLAINTIFFS' FOURTH CAUSE OF ACTION FOR AN

17

            ACCOUNTING MUST FAIL...................................................................7

      F.    PLAINTIFF'S FIFTH AND SIXTH CAUSES OF ACTION FOR

18

            BREACH OF CONTRACT AND BREACH OF COVENANT OF
            GOOD FAITH AND FAIR DEALING MUST FAIL BECAUSE

19

            THE PAROL EVIDENCE RULE BARS INTRODUCTION OF THE
            ALLEGED ORAL AGREEMENT. .........................................................8

20

      G.    PLAINTIFFS FIFTH AND SIXTH CAUSES OF ACTION FOR

21

            BREACH OF CONTRACT AND BEACH OF DUTY OF GOOD
            FAITH AND FAIR DEALING MUST FAIL BECAUSE THE

22

            STATUTE OF FRAUDS BARS PLAINTIFFS' INTRODUCTION
            OF THE ALLEGED ORAL AGREEMENT.........................................10

23

      H.    PLAINTIFFS' SEVENTH CAUSE OF ACTION FOR
            NEGLIGENCE MUST FAIL BECAUSE PLAINTIFFS HAVE NOT

24

            PLED THE NECESSARY ELEMENTS.................................................11

25

      I.    PLAINTIFFS' EIGHTH CLAIM FOR INTENTIONAL
            MISREPRESENTATION FAILS BECAUSE THE ALLEGATIONS

26

            LACK SPECIFICITY..............................................................................12

27

      J.    PLAINTIFFS' NINTH CLAIM FOR NEGLIGENT
            MISREPRESENTATION MUST FAIL..................................................13

28



1
2
3
K.   PLAINTIFFS' TENTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY MUST FAIL: PLAINTIFFS' CONCLUSORY STATEMENT THAT A FIDUCIARY DUTY EXISTED IS INSUFFICIENT TO PLEAD THE EXISTENCE OF A FIDUCIARY RELATIONSHIP..................................................................13

4
L.   PLAINTIFFS' ELEVENTH CLAIM FOR IMPOSITION OF CONSTRUCTIVE TRUST MUST FAIL..............................................14

5
M.   PLAINTIFFS' TWELFTH CAUSE OF ACTION FOR SPECIFIC PERFORMANCE MUST FAIL.............................................................14

6
7
N.   PLAINTIFFS' THIRTEENTH CAUSE OF ACTION FOR DECLARATORY RELIEF MUST FAIL. ............................................15

8
O.   PLAINTIFFS' FOURTEENTH CAUSE OF ACTION FOR VIOLATION OF TRUTH IN LENDING ACT AND OTHER FEDERAL LENDING STATUTES MUST FAIL...................................15

9
10
    1.   PLAINTIFFS' DAMAGES CLAIM UNDER TILA MUST FAIL BECAUSE AURORA WAS NOT THE CREDITOR IN THE TRANSACTION. ..........................................................16

11
    2.   PLAINTIFFS' CLAIM UNDER HOEPA MUST FAIL........................16

12
    3.   PLAINTIFFS' CLAIM UNDER RESPA MUST FAIL BECAUSE IT IS TIME-BARRED.........................................................17

13
14
    4.   PLAINTIFFS' CLAIMS UNDER TILA, HOEPA AND RESPA MUST FAIL BECAUSE THE THREE-YEAR STATUTES OF REPOSE HAVE EXTINGUISHED ANY REMAINING RIGHTS UNDER THE STATUTES. .......................17

15
16
P.   PLAINTIFFS' CLAIM FOR RELIEF UNDER BUSINESS AND PROFESSIONS CODE § 17200 MUST FAIL BECAUSE PLAINTIFFS CANNOT ESTABLISH THE BORROWED CLAIM.................18

17
18
19
Q.   PLAINTIFFS' SIXTEENTH AND SEVENTEENTH CAUSES OF ACTION FOR INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS MUST FAIL BECAUSE PLAINTIFFS HAVE NOT PLED ANY VIABLE DUTY OWED BY AURORA. ..................................................................................................21

20
21
    1.   PLAINTIFFS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS BECAUSE PLAINTIFFS DO NOT PLEAD THAT AURORA'S CONDUCT WAS EXTREME OR OUTRAGEOUS. ............................22

22
23
    2.   PLAINTIFFS HAVE NOT PLED THAT AURORA OWED ANY DUTY, THUS THE CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS MUST ALSO FAIL. ..................................................................................................22

24
25
R.   THE PRAYER FOR PUNITIVE DAMAGES SHOULD BE STRICKEN FROM THE COMPLAINT.........................................................23

26
27
S.   THE ENTIRE COMPLAINT FAILS BECAUSE PLAINTIFFS' CLAIMS ARE UNCERTAIN AND THE CLAIMS CONFLICT WITH THE DOCUMENTS ATTACHED AS EXHIBITS AND WITH OTHER DOCUMENTS CENTRAL TO PLAINTIFFS' CLAIMS...............................................................................................................23

28
IV.   CONCLUSION ........................................................................................................24



1

## TABLE OF AUTHORITIES

2

### CASES

3   6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal.App.4th 1279, 1284 (2001)....................5

4   ACH v. Finkelstein, 264 Cal.App.2d 667, 674 (1968) ..............................................14

Admiral Oil Co. v. Lynch, 188 Cal.App.2d 269, 272 (1961)......................................17

5   Balisteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990) ..........................3

6   Banco Do Brasil, S.A. v Latian, Inc., 234 Cal.App.3d 973, 1002 (1991)..................................11

7   Barrier Specialty Roofing & Coatings, Inc. v. ICI Paints North America, Inc., 2008
        WL 272876, *5(E.D.Cal.2008)(slip copy) ............................................................15

8   Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) ..........................................3

BFP v. Resolution Trust Corp., 511 U.S. 531, 544 (1994) .........................................5, 18

9   Bloom v. Martin, 865 F.Supp. 1377, 1386-87 (N.D.Cal. 1994) aff'd, 77 F.3d 318 (9th
10      Cir. 1996)..........................................................................................................21

Brown v. Busch, 152 Cal.App.2d 200, 204 (1957) ................................................5

11  Campbell v. Superior Court, 2 Cal.App.4th 904, 920 (2005) ......................................16

12  City of Hope Nat. Med. Center v. Genetech, Inc., 43 Cal.4th 375, 398 (2008)........................28

13  Collester v. Oftedahl, 48 Cal.App.2d 756, 760 (1941) ...........................................5

Communist Party v. Valencia, Inc., 35 Cal.App.4th 980 (1995)....................................16

14  Crummer v. Whitehead, 230 Cal.App.2d 264, 268 (1964) ........................................6

15  Donald v. Café Royal, 218 Cal.App.3d 168, 184 (1990)...........................................18

16  During v. First Boston Corp. 815 F.2d 1265, 1267 (9th Cir. 1987) ................................3

EPA Real Estate Partnership v. Kang,12 Cal.App.4th 171, 175 (1992)....................................11

17  Fidelity Federal Savings and Loan Assoc. v. de la Cuesta, (1982) 458 U.S. 141 .....................23

18  Gaffney v. Downey Sav. & Loan, 200 Cal.App.3d 1154, 1165 (1988) .............................18, 28

19  Gray v. First Century Bank, 549 F.Supp.2d 815 (E.D. Tenn. 2008) ...................................3

Haigler v. Donnelly, 18 Cal.2d 674, 680 (1941); Robinson Helicopter Co. v. Dana
20      Corp. (2003) 105 Cal.App.4th 779, 772-73.........................................................27

21  Hatch v. Collins, 225 Cal.App.3d 1104, 1113 (1990) ...........................................6, 7, 8, 17

Henehan v. Hart, 117 Cal.App. 386, 390 (1900).....................................................12

22  In re Community Bank of Northern Virginia,  467 F.Supp.2d 466, 480 (W.D. Pa.
23      2006)..................................................................................................................21

In re Luciano, 200 Fed.Appx. 628 (9th Cir., 2006) ...................................................20

24  Johnson v. First Federal Bank of Cal., 2008 WL 682497 (N.D. Cal., Mar. 10, 2008)...........4, 20

25  Karlsen v. American Sav. & Loan Assn., 15 Cal.App.3d 112, 117 (1971) .............................6, 7

26  Keeler v. Murphy, 117. CalApp.386, 390 (1931).....................................................12

Kennedy v. Bank of America, 237 Cal.App.2d 637, 650 (1965) .............................................17

27  Kritzer v. Lancaster, 96 Cal.App.2d 1, 6-7 (1950) ...................................................9

28  Larsen v. Cal. Fed. Bank, 76 F.3d 387 (9th Cir. 1996)................................................18



Leonard v. Bank of America Nat. Trust & Sav. Ass'n,16 Cal.App.2d 341, 344
     (1936) ............................................................................................................6

Lewis v. Superior Court, 30 Cal.App.4th 1850, 1866 (1994) .....................................8

Marksman Partners, L.P. v. Chantal Pharmaceuticals Corp., 927 F.Supp. 1297
     (C.D.Cal. 1996)............................................................................................14

McHenry v. Renne, 84 F.3d 1172, 1174 (9th Cir. 1997) .........................................28

Miller & Starr, California Real Estate (3d ed.)........................................................7

Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096 (1991) .................13, 16

Palacin v. Allstate Ins. Co., 119 Cal,App.4th 855, 734-35 (2004)...........................12

Riganti v. McElhinney, 248 Cal.App.2d 116, 125 (1697) .........................................8

Rottman v. Hevener, 54 Cal.App. 474, 478 (1921) ..................................................10

Shimpones v. Stickney, 219 Cal. 637, 649 (1934) .....................................................8

Silvas v. E*Trade Mortgage Corp., (S.D.Ca. 2006) 421 F.Supp.2d 1315 ....................22, 24, 25

Sparrow v. Interbay Funding, LLC, 2006 WL 284252 (D.D.C. 2006) (slip copy)....................20

Spreewell v. Golden State Warriors, 266 F.3d 979, 980 (9th Cir. 2001)........................3, 29

Staff v. Meridien North America Beverly Hills, LLC, 506 F.3 832 (9th Cir., 2007)...................4

Stansfield v. Starkey, 220 Cal.App.3d 59, 73 (1990) ........................................14, 15

Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 109 (1998) ..................................4

Stevens v. Ocwen Federal Bank, FSB, 2007 WL 1601484, *1 (D.Utah 2007) .........................19

Stevens v. Plumas Eureka Annex Min. Co., 2 Cal.2d 493, 497 (1953)...............................5

Tarmann v. State Farm Mutual Automobile Insurance Company 2 Cal.App.4th 153,
     157 (1991)....................................................................................................15

Tekle v. U.S., 511 F.3d 839, 855 (9th Cir. 2007) ......................................................26

Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002) .........................29

Wanetik v. Mel's of Modesto, 811 F.Supp 1402, 1408-09 (N.D.Cal. 1992)............................27

Warren v. Merrill, 143 Cal.App. 4th 96, 113-114 (2006) ...........................................8

Webb v. Chase Manhattan Mortg. Corp., 2007 WL 709335 (S.D.Ohio, March 5,
     2007) (slip copy) ...........................................................................................26

Weiss v. Washington Mut. Bank, (2007) 147 Cal.App.4th 72...........................................24

Western Mining Council v. Watt, 643 F.2d 628, 624 (9th Cir. 1981)......................................3, 7

## STATUTES

12 C.F.R. § 226.2 (17) ...............................................................................................19

12 C.F.R. § 560.2(a)....................................................................................................23

12 C.F.R. § 560.2(b) ............................................................................................23, 24

12 C.F.R. §226.32(a)(1)(i)..........................................................................................20

12 U.S.C. § 2614..................................................................................................20, 21

12 U.S.C. §§ 2601 et seq..............................................................................................19

15 U. S.C. § 1641(a) ....................................................................................................19



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

15 U.S.C. § 1641(f) ..................................................................................................19

15 U.S.C. §§ 1601 *et seq.* ......................................................................................18

15 U.S.C. §§ 1602 *et seq.* ......................................................................................18

15 U.S.C. §§ 1637 & 1635(f) .....................................................................................4

15 U.S.C. §§ 1641(e) ..............................................................................................19

15 U.S.C. §1602(aa)(1)(B) .......................................................................................20

Cal. Civ. Code § 1698(b) .........................................................................................12

Cal. Civil Code § 1006 ..............................................................................................4

Cal. Civil Code § 1698 ............................................................................................12

Cal. Civil Code § 3294 ............................................................................................27

Code Civ. Proc. § 1060 ...........................................................................................18

Code. Civ. Proc. § 1856(a) ......................................................................................10

## OTHER AUTHORITIES

4 Witkin, California Procedure, Pleadings, § 537 (4th ed.) p. 62 ...............................11

5 Witkin, California Procedure, Pleadings, § 741, at 199 (4th ed. 1997) ...................14

Deeds of Trust, § 10:212, pp. 653-54 .........................................................................5



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

Defendant Aurora Loan Services, LLC ("Aurora") respectfully submits the following points and authorities in support of its Motion to Dismiss the Complaint and to Strike the Punitive Damages Claim:

## I. INTRODUCTION

Plaintiffs' Complaint is fatally vague and uncertain in its entirety and asserts no legitimate claim for relief against Aurora. Plaintiffs' claims have no merit and can never be amended to state a claim for relief against Aurora. The simple fact is that Plaintiff Scott Zimmerman took out a loan secured by his residence and did not make the payments on the loan. Mr. Zimmerman failed to comply with the terms of multiple forbearance agreements and thus Aurora foreclosed on the underlying security.

## II. SUMMARY OF ARGUMENT

Plaintiffs commenced this action in an effort to overturn the foreclosure sale of their residence. Judy Zimmerman lacks standing to pursue any claims against Aurora because she was not a co-owner of the property and she signed none of the loan documents or the repayment agreements at issue in this case. All claims of Judy Zimmerman must be dismissed.

Plaintiffs' claims in equity must fail because Plaintiffs have made no effort to tender sums due under the foreclosed Deed of Trust. Plaintiffs' contract claims fail because Plaintiffs have not pled sufficient facts to escape the bar of the parol evidence rule or the statute of frauds. Plaintiffs' fraud claims based upon the alleged breach of the oral agreement fail both because the oral agreement has not been properly pled and because the fraud claims have not been alleged with any particularity as required by Federal Rule of Civil Procedure ("FRCP") 9.

Plaintiffs claim that statutes were violated and name the Trust in Lending Act ("TILA"), Home Ownership Equity Protection Act ("HOEPA"), and the Real Estate Settlement Procedures Act ("RESPA") (together, the "federal lending statutes"), but fail to state how or why any statute is implicated and what Aurora did or did not do that caused the violation. Plaintiffs' claim for restitution under Business and Professions §17200 ("§17200") based upon the alleged violations of the federal lending statutes also fails because the requisite underlying statutory violation has not been pled. The §17200 claim also fails because it is uncertain; nothing in the Complaint indicates



1  what provisions of the federal lending statutes were violated and how §17200 is applicable.
2  Furthermore, the §17200 claim is preempted by federal law and Plaintiffs cannot use §17200 to
3  regulate Aurora's activities in this case.

4      Plaintiffs' tort claims for negligence, breach of fiduciary duty and emotional distress have
5  no merit because Aurora owed no duty of care to Plaintiffs and Plaintiffs have failed to allege the
6  facts necessary to allege that any fiduciary duty arose.

7      Finally, Plaintiffs fail to state a sufficient basis for an award of punitive damages. As such,
8  if Plaintiffs' Complaint is not dismissed in its entirety, the claims for punitive damages should be
9  stricken from the Complaint.

10  **A.    Underlying Facts**

11      Plaintiff Scott Zimmerman refinanced his home in December of 2004 (Complaint "Compl."
12  ¶ 1) by taking out a first loan in the amount of $448,000 and a second for $112,000.  (Compl. ¶ 9).
13  Scott Zimmerman alone executed the loan documents.  (Compl. ¶¶ 9, 10).

14      Plaintiff missed several payments in 2007 and because of the delinquency, Aurora
15  commenced non-judicial foreclosure against the property. (Compl. ¶ 12). Plaintiff contacted Aurora
16  in December of 2007 to request hardship assistance. (Compl. ¶ 13). Plaintiff Scott Zimmerman
17  executed and returned a written repayment agreement to Aurora on January 31, 2008 along with his
18  payment under the written agreement. (Compl. ¶ 16).  The Complaint further alleges that, in March
19  or April, Plaintiff learned that the property had been foreclosed and that a trustee's deed had been
20  issued naming Aurora as the owner of the property.  (Compl. ¶ 17).

21  **B.    Relevant Procedural History**

22      Plaintiffs filed their Complaint in the Superior Court of Contra Costa County on July 21,
23  2008.  Aurora became aware of the filing and filed a Notice of Removal with this Court and the
24  state court on August 5, 2008.  There have been no other filings in this case and no discovery has
25  yet commenced.  None of the other defendants have appeared.

26  **III.  ARGUMENT**

27  **A.    Standard on Motion To Dismiss**

28      Federal Rule of Civil Procedure 12(b)(6) provides that a dismissal is proper where the



- 2 -

1    complaint fails to state either a "cognizable legal theory" or "sufficient facts alleged under a

2    cognizable legal theory."  <u>Balisteri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1990).  In

3    reviewing the Complaint, the Court need not accept as true unwarranted deductions, unreasonable

4    inferences, conclusory allegations or legal characterizations.  <u>Spreewell v. Golden State Warriors</u>,

5    266 F.3d 979, 980 (9th Cir. 2001); *see also* <u>Western Mining Council v. Watt</u>, 643 F.2d 628, 624 (9th

6    Cir. 1981).  The Complaint must set forth sufficient factual allegations to raise the right to relief

7    above the speculative level.  <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965 (2007).

8        The Court may disregard allegations in a complaint that are contradicted by facts established

9    in documents exhibited to or referenced in the complaint.  <u>During v. First Boston Corp.</u> 815 F.2d

10    1265, 1267 (9th Cir. 1987).

11        In this case, there is no law to support the claims Plaintiffs have made; the facts alleged are

12    insufficient to state a claim and contradict relevant documents in issue; and there are several

13    insurmountable bars on the face of the Complaint.  *See*, <u>Gray v. First Century Bank</u>, 549 F.Supp.2d

14    815 (E.D. Tenn. 2008).  The Complaint should be dismissed in its entirety.

15  **B.**    <u>**Judy Zimmerman Lacks Standing to Prosecute the Complaint: She was not a**</u>
       <u>**Borrower on the Subject Loan nor a Party to the Repayment Agreements.**</u>
16

17        In order to establish standing, a plaintiff must show that (1) she suffered an injury in fact;

18    (2) she can trace the injury to the conduct of the defendant; and (3) the court can redress her with a

     favorable decision.  <u>Staff v. Meridien North America Beverly Hills, LLC</u>, 506 F.3 832 (9th Cir.,
19
    2007).  If a party lacks standing, the court does not have jurisdiction as to that party.  <u>Steel Co. v.</u>
20
    <u>Citizens for a Better Environment</u>, 523 U.S. 83, 109 (1998).
21

22        Here, the Complaint states that Scott and Judy Zimmerman are the equitable owners of the

     property known as 4042 Meadows Lane, Oakley, California. (Compl. ¶ 1).  All claims in the
23
    Complaint flow from alleged TILA, HOEPA and RESPA violations which occurred at the loan's
24
    inception, as well as from the alleged oral agreement between Plaintiff Scott Zimmerman and
25
    Aurora.  TILA, as amended by HOEPA applies to "consumers" defined to be "the party to whom
26
    credit is offered or extended."   15 U.S.C. §§ 1637 & 1635(f).  Scott Zimmerman is the only
27
    "consumer" under TILA and HOEPA.  Although Plaintiffs have not cited a particular section of
28



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1  RESPA which applies in this case, the various sections deal with "applicants" and "borrowers."

2  The Complaint does not allege that Judy Zimmerman was an applicant and she did not borrow any

3  funds from the original creditor. (Jarboe Decl. Exhibits C, D, E).  In addition, Plaintiff Scott

4  Zimmerman alleges he and Aurora entered the repayment agreements Scott Zimmerman's signature

5  is the only signature affixed to the written repayment agreement. (Coml.  ¶ 16)

6      Judy Zimmerman now occupies the property, however, title conferred by occupancy is not a

7  sufficient interest in real property to enable the occupant or the occupant's privies to commence or

8  maintain an action to quiet title.  Cal. Civ. Code § 1006. "In the Ninth Circuit, where a complaint

9  on its face reveals that the plaintiff lacks standing, a motion to dismiss for failure to state a claim

10 under <u>Rule 12(b)(6)</u> is proper."  <u>Johnson v. First Federal Bank of Cal.,</u> 2008 WL 682497 (N.D.

11 Cal., Mar. 10, 2008) (slip copy) (dismissing allegations in the complaint against a lender by a non-

12 borrowing spouse).  The Complaint reveals that Judy Zimmerman lacks the capacity to maintain

13 this action and all claims of Judy Zimmerman should be dismissed.

14 **C.    <u>Plaintiffs' First Cause of Action to Set Aside the Trustee's Sale and Second
       Cause of Action to Cancel the Trustee's Deed Fail as a Matter of Law.</u>**

15

16      A fundamental principal of law in equitable proceedings is that one who seeks equity should

17 do equity with respect to the dispute before any relief is awarded.  <u>Collester v. Oftedahl</u>, 48

    Cal.App.2d 756, 760 (1941).  Here, Plaintiffs offer no equity, but request that equitable principles

18 be invoked to place them back into ownership of the property, free of any liens, and without the

19 responsibility to tender anything due to Aurora. (Compl. ¶ 30,32; prayer for relief, ¶  3).  Plaintiffs

20 have pled no facts entitling them to assert claims in equity and the Complaint should be dismissed.

21

22 **1.    <u>Plaintiff has not Pled Sufficient Procedural Irregularity to Overcome the
       Presumption of Regularity of the Trustee's Sale.</u>**

23      The United States Supreme Court has held that the foreclosure statutes adopted by the

24 various states should not be displaced by the federal courts, otherwise "every piece of realty

25 purchased at a foreclosure" could be challenged and title would be clouded in contravention of the

26 policies underlying non-judicial foreclosure sales.  <u>BFP v. Resolution Trust Corp.</u>, 511 U.S. 531,

27 544 (1994).  A non-judicial foreclosure is accompanied by a common law presumption that it "was

28 conducted regularly and fairly."  <u>Brown v. Busch,</u> 152 Cal.App.2d 200, 204 (1957); s*ee also*



- 4 -

1  Stevens v. Plumas Eureka Annex Min. Co., 2 Cal.2d 493, 497 (1953).  The presumption can only

2  be rebutted by substantial evidence of prejudicial procedural irregularity.  6 Angels, Inc. v. Stuart-

3  Wright Mortgage, Inc., 85 Cal.App.4th 1279, 1284 (2001).  It is the burden of the party challenging

4  the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's

5  regularity.  Hatch v. Collins, 225 Cal.App.3d 1104, 1113 (1990).

6        Here, Plaintiffs merely make a bare assertion that the executed, written forbearance

7  agreement which included a statement that there were no oral modifications was ineffective, and

8  that an oral forbearance agreement with contradictory terms should control. (Compl. at ¶16).  The

9  bare allegation of the existence of an oral forbearance agreement alone is not the "substantial

10  evidence of procedural irregularity" required to overcome the presumption of regularity of the sale.

11  Because Plaintiffs failed to plead the necessary substantial evidence of procedural irregularity, the

12  first and second causes of action must fail.

13      **2.**      **The Tender Rule Bars Plaintiffs' Challenge to the Trustee's Sale.**

14        An action to set aside a trustee's sale must be accompanied by an offer to pay the full

15  amount of the debt for which the property was security.  Karlsen v. American Sav. & Loan Assn.,

16  15 Cal.App.3d 112, 117 (1971); Crummer v. Whitehead, 230 Cal.App.2d 264, 268 (1964).  This

17  rule is premised upon the equitable maxim that a court of equity will not order that a useless act be

18  performed. "Equity will not interpose its remedial power in the accomplishment of what seemingly

19  would be nothing but an idly and expensively futile act, nor will it purposely speculate in a field

20  where there has been no proof as to what beneficial purpose may be subserved through its

21  intervention."  Leonard v. Bank of America Nat. Trust & Sav. Ass'n,16 Cal.App.2d 341, 344

22  (1936).

23        Plaintiffs have not pled that the entire amount of the debt has been tendered.  A cause of

24  action claiming an irregular foreclosure sale fails unless the trustor can allege and establish a valid

25  tender.  Karlsen, supra, 15 Cal.App.3d at 121.  "Without an allegation of such tender in the

26  complaint that attacks the validity of the sale, the complaint does not state a cause of action."

27  Miller & Starr, California Real Estate (3d ed.), Deeds of Trust, § 10:212, pp. 653-54.

28        Here, Plaintiffs merely offer to tender the delinquent amounts due under the foreclosed deed



1    of trust. (Compl. ¶ 23).  Plaintiffs also make a conditional offer to tender other sums once their

2    claim for an Accounting is granted by this Court.  Id.    Plaintiffs' conditional offer to tender is

3    ineffective as a matter of law.  See Gaffney v. Downey Savings & Loan Assn., 200 Cal.App.3d

4    1154, 1167 (1988) (holding that the deposit of disputed loan payments in a bank account controlled

5    by the borrower's attorney was not an unconditional tender of amounts due under the deed of trust).

6    As a result, the first and second causes of action must fail.

7    **D.    Plaintiffs' Third Cause of Action for Quiet Title Must Fail Because Plaintiffs
         Cannot Demonstrate that Plaintiffs have Superior Title in the Property to**
8        **Aurora.**

9        The California Code of Civil Procedure sets forth the elements of a cause of action for quiet

10   title as follows:

11           The complaint shall be verified and shall include all of the following:  (a) A
         description of the property that is the subject of the action. … In the case of real
12       property, the description shall include both its legal description and its street address
         or common designation, if any; (b) The title of the plaintiff as to which a
13       determination under this chapter is sought and the basis of the title. …; (c) The
         adverse claims to the title of the plaintiff against which a determination is sought; (d)
14       The date as of which the determination is sought. If the determination is sought as of
         a date other than the date the complaint is filed, the complaint shall include a
15       statement of the reasons why a determination as of that date is sought; (e) A prayer
         for the determination of the title of the plaintiff against the adverse claims. Cal.
16       Civ.Proc. § 761.020.

17

18       In order to successfully plead a cause of action for quiet title in California, a plaintiff must

19   also allege that his title is superior to that of the defendant.  Gerhard v. Stephens, 68 Cal.2d 864,

20   918 (1968).  In this case, however, the allegations in the Complaint establish that Aurora's interest

21   in the property is superior to Plaintiffs'.  For example, ¶ 102 of the Complaint acknowledges that

22   Aurora is currently in possession of title to the property and that Aurora has refused "to return title

23   of the subject property to plaintiffs."  Further, Plaintiffs acknowledge that notices of sale were

24   posted and published (as required under the non-judicial foreclosure statutes) and that Aurora is the

25   record legal owner of the property. (Compl. ¶ 22). Plaintiffs clearly acknowledge that Aurora's title

26   is superior to Plaintiffs' (Compl. ¶ 54), and as a result, their claim for quiet title fails on that basis.

27       Plaintiffs state in the Complaint that they are the equitable owners of the property.  (Compl.

28   ¶ 1).   The holder or claimant of an equitable interest in title cannot maintain an action for quiet



1    title against the legal owner. <u>Lewis v. Superior Court</u>, 30 Cal.App.4th 1850, 1866 (1994); <u>Riganti</u>

2    <u>v. McElhinney</u>, 248 Cal.App.2d 116, 125 (1697).  The exception is where the party holding legal

3    title has obtained that title by fraud.  <u>Warren v. Merrill</u>, 143 Cal.App. 4th 96, 113-114 (2006).

4    Plaintiffs have not alleged that Aurora acquired title to the property by fraud – Plaintiffs claim that

5    the fraud occurred in the making of the oral agreement, which was outside the foreclosure process,

6    therefore, the fraud exception does not apply.

7        It is settled law in California that a mortgagor cannot quiet his title against the mortgagee

8    without paying the debt secured.  <u>Shimpones v. Stickney</u>, 219 Cal. 637, 649 (1934).  Plaintiffs

9    merely claim they have tendered or offer to tender the amount necessary to cure the default under

10    the foreclosed deed of trust once such amounts are determined pursuant to an accounting.  (Compl.

11    ¶ 23).   This offer is insufficient, as the law requires that the entire amount owed be tendered.

12    <u>Shimpones</u>, *supra*, 219 Cal. at 649.

13        Plaintiffs' third claim for quiet title must fail because Plaintiffs have not pled their superior

14    title to the property and because they have not tendered the entire amount of the debt.

15    **E.**      <u>**Plaintiffs' Fourth Cause of Action for an Accounting Must Fail.**</u>

16        In order to properly state a cause of action for an accounting, the plaintiff is required to

17    allege the following:  (1)  a fiduciary relationship or other circumstances appropriate to the remedy;

18    and (2) a balance due from the defendant to the plaintiff that can only be ascertained by an

19    accounting; and (3) misconduct.  <u>Kritzer v. Lancaster</u>, 96 Cal.App.2d 1, 6-7 (1950).   Plaintiffs have

20    pled no facts to support their claim that there was fiduciary relationship between themselves and

21    Aurora, as servicer of Plaintiffs' loan, because a loan servicer owes no fiduciary duty to borrowers.

22    <u>Marks v. Ocwen Loan Servicing, LLC</u>,  2008 WL 344210, at *6 (N.D.Cal. Feb. 6, 2008).

23    Plaintiffs do not allege that there is currently any amount due to them from Aurora.  Plaintiffs also

24    fail to allege any other circumstances in which the equitable remedy of an accounting might be

25    appropriate. Thus, the fourth cause of action for accounting must fail.

26    ///

27    ///

28    ///



1  **F.    Plaintiff's Fifth and Sixth Causes of Action for Breach of Contract and Breach**
**of Covenant of Good Faith and Fair Dealing Must Fail Because the Parol**
2  **Evidence Rule Bars Introduction of the Alleged Oral Agreement.**

3         The original contract between the original lender and Plaintiff Scott Zimmerman was the

4  promissory note and the deed of trust at issue in this case.  Any forbearance, whether oral or

5  written, would have served to modify the obligations of the parties created by the note and deed of

6  trust.

7         The oral agreement Plaintiffs claim arose on January 28, 2008, if it ever did exist, was

8  modified and superseded by the written repayment agreement executed by Plaintiff Scott

9  Zimmerman on January 31, 2008. (Compl. ¶ 16).  The written repayment agreement contained the

10  following integration clause:

11              13.  The entire agreement.  This agreement sets forth all of the
              promises, covenants, agreements, conditions and understandings
12              between the parties hereto with respect to the subject matter hereof.
              This agreement supersedes all prior understandings, inducements or
13              conditions express or implied, oral or written with respect thereto
              except as contained or referred to herein.  This agreement may not be
14              amended, waived, discharged or terminated orally, but only by an
              instrument in writing. Id.
15

16         The purpose of an integration clause is to preclude the introduction of evidence which varies

17  or contradicts the terms of the written instruments.  Code of Civ. Proc. § 1856(a).  Plaintiffs are

18  barred from introducing the oral forbearance agreement which contradicts the written repayment

19  agreement executed by Plaintiff Scott Zimmerman just three days later because:

20              a written contract supersedes all preceding or accompanying oral negotiations or
              stipulations. . . The rule that a writing which purports to be the complete contract of
21              the parties is deemed in law to be the full repository of the agreement or contract,
              that the whole contract is expressed by it, and that evidence of oral stipulations is not
22              admissible to incorporate other elements in it or to alter or enlarge its terms, is
              applicable to negotiable as well as to nonnegotiable instruments.  Rottman v.
23              Hevener, 54 Cal.App. 474, 478 (1921)
24

25         Plaintiff Scott Zimmerman acknowledges that he did sign the written repayment agreement

26  but claims he failed to read the document.  (Compl. ¶ 16).  Plaintiff, who is a licensed California

27  attorney (and is representing himself and Judy Zimmerman in this case), asks this Court to

28  disregard his signature on a repayment agreement with the terms that contradict those in the alleged



- 8 -

1    oral forbearance agreement in every material manner.  Plaintiffs have not pled facts to overcome

2    the parol evidence rule's bar to the oral agreement.  The parol evidence rule in California:

3            prohibits the introduction of extrinsic evidence -oral or written-to
4            vary or contradict the terms of an integrated written instruments.
             [Citations omitted]. According to this substantive rule of law, when
5            the parties intend a written agreement to be the final and complete
             expression of their understanding, that writing becomes the final
6            contract between the parties, which may not be contradicted by even
             the most persuasive evidence of collateral agreements. Such evidence
7            is legally irrelevant."[Citation omitted.] EPA Real Estate Partnership
             v. Kang,12 Cal.App.4th 171, 175 (1992).

8            The California Court of Appeal has defined a four-part test to determine whether the parol

9    evidence rule bars the consideration of an oral agreement: (1) Does the written agreement appear to

10   be complete on its face, or is there an integration clause? (2) Does the alleged oral agreement or

11   proposed interpretation directly contradict the written instrument? (3) Would the oral agreement

12   naturally have been included in the written instrument? And (4) Would evidence of the oral

13   agreement be likely to mislead the trier of fact? Banco Do Brasil, S.A. v Latian, Inc., 234

14   Cal.App.3d 973, 1002 (1991).  An affirmative answer to any one of these questions bars

15   consideration of the offered parol evidence. Id.  Here, the written agreement contains an integration

16   clause and the oral agreement contradicts the written agreement in every material aspect, thus it

17   cannot survive the bar of the parol evidence rule.

18           Plaintiffs allege that the terms of the oral forbearance agreement are these:

19           1.   Aurora would withdraw the Notice of Default filed against the property and cease

20   foreclosure activities;

21           2.  Plaintiff Scott Zimmerman would pay Aurora $4,500 per month for three months; and

22           3.  Aurora would consider refinancing Plaintiff's loan (Compl. ¶ 36)

23           The terms of the oral forbearance directly contradict the integrated written repayment

24   agreement, which has the following terms:

25           1.   Foreclosure notices would not be withdrawn and the foreclosure proceedings would

26   resume without need of additional notices to Plaintiffs.  (Jarboe Decl. Exhibit A, ¶ 7).

27           2.   Plaintiff Scott Zimmerman would pay the sum of $4,153.33 per month for January,

28   February and March, and a final payment of $27,332.52 was due in April of 2008.  (Jarboe Decl.



- 9 -

1  Exhibit A, p.1).

2      3.  There is no mention of refinancing the loan at the end of three months.(Jarboe Decl.

3  Exhibit A).

4      At the motion to dismiss stage, the moving party must conclusively establish that the

5  language in the writing unambiguously negates beyond reasonable controversy the construction

6  alleged in the Complaint.  <u>Palacin v. Allstate Ins. Co.</u>, 119 Cal,App.4th 855, 734-35 (2004).  The

7  language in the writing must be "so clear that parol evidence would be inadmissible to refute it."

8  <u>Id.</u> at 735.  Every single material term of the oral agreement is contradicted by the written

9  repayment agreement and as a result, there is no doubt that the parol evidence rule bars introduction

10 of the oral contract in this case.  The claim for breach of contract and the dependant claim for

11 breach of the duty of good faith and fair dealing must fail.

12 **G.    Plaintiffs Fifth and Sixth Causes of Action for Breach of Contract and Beach of**
13 **Duty of Good Faith and Fair Dealing Must Fail Because The Statute of Frauds**
   **Bars Plaintiffs' Introduction of the Alleged Oral Agreement.**
14

15     Plaintiffs have pled that the oral forbearance agreement came into existence on January 28,

16 2008, and controlled the contractual relationship between Plaintiffs and Aurora.  The statute of

17 frauds with respect to modification of written contracts, Cal. Civil Code § 1698, provides:

18     (a) A contract in writing may be modified by a contract in writing.
       (b) A contract in writing may be modified by an oral agreement to the extent that the
19     oral agreement is executed by the parties.
       (c) Unless the contract otherwise expressly provides, a contract in writing may be
20     modified by an oral agreement supported by new consideration . . .

21     Performance by one party alone is not sufficient to satisfy the "execution" requirement

22 stated in Cal. Civ. Code § 1698(b).  "The cases are clear under this section that an oral agreement is

23 not executed within the meaning of the Code unless it has been fully performed by both parties."

24 <u>Keeler v. Murphy</u>, 117. CalApp.386, 390 (1931); *see also* <u>Henehan v. Hart</u>, 117 Cal.App. 386, 390

25 (1900).  Plaintiffs have affirmatively pled that Aurora did not execute the oral agreement because,

26 as Plaintiffs note, the foreclosure sale was completed (Compl. ¶ 21).

27     Plaintiffs have not pled that any new consideration was given under the oral agreement so

28 that the statute of frauds is met under §1698(c).  Instead, Plaintiffs' allegations support the fact that



1  the written repayment agreement was intended to, and did represent the understanding of the parties

2  because on the same date that Plaintiff Scott Zimmerman executed and returned the written

3  repayment agreement to Aurora, he also transmitted a payment to Aurora, consistent with the terms

4  of the written repayment agreement (Jarboe Decl., Exhibit A, ¶ a.1) (Compl. ¶ 15).

5  **H.    Plaintiffs' Seventh Cause of Action for Negligence Must Fail Because Plaintiffs
6       Have not Pled the Necessary Elements**

7       To state a claim for negligence, a plaintiff must plead:  (1) that defendant owed a legal duty

8  of care to plaintiff; (2) defendant breached that duty; (3) injury to plaintiff as a result of the breach;

9  and (4) damage to plaintiff.  4 Witkin, California Procedure, Pleadings, § 537 (4th ed.) p. 624.

10      Plaintiffs have pled that Aurora's duty was "to exercise reasonable care and skill. . .

11  integrity, honesty and loyalty." (Compl. ¶ 48).  As a general rule, a financial institution owes a

12  borrower no duty of care.  Nymark v. Heart Fed. Sav. & Loan Ass'n, 231 Cal.App.3d 1089, 1096

13  (1991).

14       Plaintiffs pled that Aurora's breach of its duty occurred when Aurora "failed to disclose to

15  Plaintiffs that it did not withdraw the Notice of Default as agreed and that it was going forward with

16  the trustee's sale." (Compl. ¶ 48).  Plaintiffs are incorrect, however, because Aurora did disclose

17  that the foreclosure process would resume without further notice in the event the written repayment

18  agreement was breached.  (Jarboe Decl., Exhibit A, ¶ 5, 7).  Plaintiff Scott Zimmerman admits that

19  he eventually read the written repayment agreement that he executed and returned to Aurora, and

20  that he understood that the terms of the written agreement were different from the terms of the oral

21  agreement Plaintiff claims was negotiated. Id. Plaintiff Scott Zimmerman was notified that the

22  Notice of Default would not be withdrawn and that the foreclosure would commence from the point

23  at which it was stopped.  As a result, Plaintiffs have failed to plead that Aurora breached any duty

24  to Plaintiffs.

25      Plaintiffs further fail to allege that Aurora's breach, by not notifying Plaintiffs that the

26  notices would not be withdrawn, was the actual or proximate cause of their damages.    The

27  foreclosure sale went forward because Plaintiffs paid only the first payment due under the written

28  repayment agreement.  Plaintiffs claim that further payments were excused, (Compl. ¶ 37) but fail



1   to state why this may be the case. It was not the case and the foreclosure sale went forward due to

2   non-payment by the Plaintiffs. Notification that the foreclosure notice was not withdrawn was not

3   the actual or proximate cause of Plaintiffs' claimed damages; the proximate cause of their damages

4   was their own failure to make payments under the written repayment agreement.

5       Plaintiffs have failed to plead the necessary elements to state a cause of action for

6   negligence and as a result, Plaintiffs' seventh claim for negligence must fail.

7   **I.    Plaintiffs' Eighth Claim for Intentional Misrepresentation Fails Because the**
        **Allegations Lack Specificity.**

8

9       The elements for intentional misrepresentation are: (1) a false representation of a material

10  fact; (2) defendants' knowledge of the falsity; (3) intent to induce another into relying on the

11  representation; (4) actual reliance on the representation; and (5) resulting damage. <u>ACH v.</u>

12  <u>Finkelstein</u>, 264 Cal.App.2d 667, 674 (1968). Additionally, the fraud claim must be pled

13  specifically and every element of the fraud must be clearly alleged. <u>Stansfield v. Starkey</u>, 220

14  Cal.App.3d 59, 73 (1990). The allegations must go not only to the time, place and content of the

15  alleged misrepresentations, but also the circumstances of the false statements. <u>Marksman Partners,</u>

16  <u>L.P. v. Chantal Pharmaceuticals Corp.</u>, 927 F.Supp. 1297 (C.D.Cal. 1996). The particularity

17  requirement for fraud mandates that a plaintiff "show how, when, where, to whom, and by what

18  means the representations were tendered." <u>Stansfield v. Starkey</u>, *supra*, 220 Cal.App.3d at 73.

19  Plaintiffs allege that Scott Zimmerman called Aurora and spoke with an unnamed representative

20  sometime on or about January 28, 2008, during which conversation, the terms of the oral

21  forbearance agreement were negotiated. (Compl. ¶ 14). Plaintiffs set forth no specific information

22  in the Complaint, and the fraud claims fail on this basis alone.

23      When asserting fraud against a corporation, a plaintiff must also specifically allege the

24  names of the persons, their authority to speak, to whom they spoke, what they said or wrote, and

25  when it was said or written. *See* <u>Tarmann v. State Farm Mutual Automobile Insurance Company</u> 2

26  Cal.App.4th 153, 157 (1991). Plaintiffs make no averments concerning the person they claim to

27  have orally modified their repayment agreement, what authority this person had to bind Aurora and

28  when exactly this conversation took place.



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1    The fraud claims necessarily fail because they were not pled with specificity and because

2    Plaintiff does not allege that Aurora's employees were authorized to make  misrepresentations such

3    as those alleged in the Complaint.  Id. at 157.

4    **J.**    **Plaintiffs' Ninth Claim for Negligent Misrepresentation Must Fail.**

5    The elements of a claim for negligent misrepresentation are (1) a misrepresentation of a past

6    or existing fact, (2) without reasonable grounds for believing it to be true, (3) intent to induce

7    another's reliance in the facts misrepresented, (4) ignorance of the truth and justifiable reliance by

8    the party at whom the misrepresentation was directed, and (5) damages.  Barrier Specialty Roofing

9    & Coatings, Inc. v. ICI Paints North America, Inc., 2008 WL 272876, *5(E.D.Cal.2008)(slip copy).

10    The oral agreement has not been properly pled to avoid the bars of the parol evidence rule

11    and the statute of frauds.  Even if the existence of an oral agreement survives these bars, it was

12    superseded by the written repayment agreement that bears Plaintiff's signature.  Plaintiffs were

13    aware of the fact that the alleged oral contract and the written repayment agreement contained

14    different terms before the foreclosure sale ever took place, thus Plaintiffs cannot be said to have

15    justifiably relied on any representations in the oral agreement and their damages do not flow from

16    the alleged misrepresentation.    Plaintiffs have not pled a cause of action for negligent

17    misrepresentation and Plaintiffs' ninth claim should be dismissed.

18    **K.**    **Plaintiffs'  Tenth Cause of Action for Breach of Fiduciary Duty Must Fail:**
      **Plaintiffs' Conclusory Statement that a Fiduciary Duty Existed is Insufficient to**
19    **Plead the Existence of a Fiduciary Relationship**

20    Plaintiffs conclude that Aurora owed Plaintiffs a fiduciary duty as the servicer of their loan.

21    Plaintiffs fail to allege how a fiduciary relationship might have arisen between themselves and

22    Aurora, as their loan servicer. A financial institution generally owes borrowers no duty.  Nymark,

23    supra, 231 Cal.App.3d at 1096.

24    Plaintiffs' tenth cause of action for breach of fiduciary duty must fail because Plaintiffs

25    have not pled any facts that a fiduciary duty arose between themselves and Aurora as their loan

26    servicer.

27    ///

28    ///



L.    **Plaintiffs' Eleventh Claim for Imposition of Constructive Trust Must Fail.**

A Constructive Trust is not a cause of action, but is an equitable remedy imposed to prevent unjust enrichment and arises when one party holding property has an equitable duty to convey it to another.  Campbell v. Superior Court, 2 Cal.App.4th 904, 920 (2005).

> [A] constructive trust may only be imposed where the following three conditions are satisfied: (1) the existence of a *res* (property or some interest in property); (2) the *right* of a complaining party to that res; and (3) some *wrongful* acquisition or detention of the res by another party who is not entitled to it, [Citations.]" Communist Party v. Valencia, Inc., 35 Cal.App.4th 980 (1995).

Plaintiffs' eleventh cause of action for the imposition of a constructive trust should be dismissed because it is not a recognized cause of action in California.  Flores v. Emerich & Fike, 2008 WL 2489900, *39 (E.D. Cal., June 18, 2008)(slip copy).  Plaintiffs' have not pled that they tendered the amounts due under the deed of trust or that Aurora, by legitimately foreclosing on the security for Plaintiffs' defaulted loan, wrongfully acquired Plaintiffs' property. Plaintiffs have failed to plead a cause of action for constructive trust, thus the eleventh claim must fail.

M.    **Plaintiffs' Twelfth Cause of Action for Specific Performance Must Fail.**

The elements of a claim for specific performance are: (1)  The making of a specifically enforceable type of contract that is sufficiently certain in its terms;  (2)  Adequate consideration; (3) Plaintiffs' performance, tender, or excuse of non-performance; (4).   Defendant's breach; (5) Inadequacy of the remedy at law.  5 Witkin, California Procedure, Pleadings, § 741, at 199 (4th ed. 1997).

Plaintiffs' allegations are insufficient to state a claim for specific performance because Plaintiffs have not pled sufficient facts to lift the oral contract out of the statute of frauds.  Kennedy v. Bank of America, 237 Cal.App.2d 637, 650 (1965) (upholding the trial court's order sustaining demurrer to plaintiff's cause of action because plaintiff failed to plead facts which overcome the statute of frauds.).  Similarly, Plaintiffs have not sufficiently pled around the parol evidence bar to the oral contract.  Admiral Oil Co. v. Lynch, 188 Cal.App.2d 269, 272 (1961) (upholding trial court's order sustaining demurrer because parol evidence could not be admitted to establish the existence of a trust agreement).



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1    In addition, Plaintiffs have not pled that the remedy at law is inadequate or make any

2    allegation that a damages award is insufficient to redress the harms claimed. Plaintiffs' twelfth

3    claim for specific performance should be dismissed.

4    **N.**    **Plaintiffs' Thirteenth Cause of Action for Declaratory Relief Must Fail.**

5    Declaratory relief requires a present and actual controversy between parties to an existing or

6    future right.  Code Civ. Proc. § 1060.  Plaintiffs' claims fail against Aurora: the foreclosure sale is

7    final and there is nothing left to enjoin or declare. *See* <u>Donald v. Café Royal,</u> 218 Cal.App.3d 168,

8    184 (1990).  Plaintiffs' request to set aside the legitimate non-judicial foreclosure sale would be an

9    impermissible usurpation of California's non-judicial foreclosure procedures.  <u>BFP</u>, *supra*, 511 U.S.

10    531.

11    To obtain injunctive relief to overturn a foreclosure, the borrower must unambiguously

12    tender payment of any amounts admittedly owed to the lender.  <u>Gaffney v. Downey Sav. & Loan,</u>

13    200 Cal.App.3d 1154, 1165 (1988).  Plaintiffs' Complaint does not allege a tender of any amounts

14    necessary to upset the trustee's sale and cancel the trustee's deed.   Thus, the thirteenth claim for

15    declaratory relief should be dismissed.

16    **O.**    **Plaintiffs' Fourteenth Cause of Action for Violation of Truth In Lending Act**
        **and Other Federal Lending Statutes Must Fail.**
17

18    The fourteenth cause of action for violation of the federal lending statutes fails because the

19    allegations reveal a fatal flaw on their face:  a claim for damages has expired due to the one-year

20    statute of limitations and any possible remaining claims have been extinguished by the three-year

21    statutes of repose.

22    Plaintiff Scott Zimmerman executed the loan documents for the loans at issue in this case in

23    December, 2004.  Any claim for damages under TILA, HOEPA or RESPA necessarily arose at that

24    time.  <u>Larsen v. Cal. Fed. Bank</u>, 76 F.3d 387 (9th Cir. 1996).  Plaintiffs have generally alleged that

25    disclosures were not given as required and thus, that Aurora violated TILA, 15 U.S.C. §§ 1601 *et*

26    *seq.,* HOEPA, 15 U.S.C. §§ 1602 *et seq.* and RESPA, 12 U.S.C. §§ 2601 *et seq.*  Plaintiffs fail to

27    state which disclosures were not given or why TILA, HOEPA and RESPA may have any

28    application in this case.  (Compl. ¶ 107).  If Plaintiffs could demonstrate that one or all of the



1  federal lending statutes were violated, they fail to allege how these violations might be imputed to

2  Aurora, as the face of the deeds of trust at issue reveal that it was another entity that extended credit

3  to the Plaintiffs.  (Jarboe Decl., Exhibits D & E).

4       **1.**     **Plaintiffs' Damages Claim Under TILA Must Fail Because Aurora was**

5            **not the Creditor in the Transaction.**

6        The Complaint makes a bare, unsupported claim that TILA was violated and thus, that

7  Plaintiff is entitled to damages from Aurora.  (Compl. p. 22, line 3). TILA, 15 U.S.C. §§ 1641(e),

8  and its implementing legislation, Regulation Z ("Reg. Z")[1]  provides that only the original creditor

9  is liable for disclosure errors not apparent on the face of the documents.

10        Plaintiffs have alleged that the deeds of trust named Aurora as trustee. (Compl. ¶ 10); that

11  Aurora was an assignee of the notes (Compl. ¶ 11) and that Aurora was the loan servicer (Compl. ¶

12  52).   Plaintiffs have not alleged any facts necessary to make Aurora (as a trustee under the deed of

13  trust, assignee of notes, or as a loan servicer) liable for damages for a disclosure violation under

14  TILA, HOEPA or RESPA.  There is no authority for the proposition that a trustee under a deed of

15  trust is responsible for disclosure violations under TILA or HOEPA. See Stevens v. Ocwen Federal

16  Bank, FSB, 2007 WL 1601484, *1 (D.Utah 2007).Likewise, a loan servicer is not liable under

17  TILA or HOEPA.  15 U.S.C. § 1641(f).  A subsequent assignee is only liable for violations

18  apparent on the face of the documents.  15 U. S. C. § 1641(a).  Plaintiffs have failed to plead what

19  the disclosure violations were or that any violation appeared on the face of the documents.  As a

20  result, Plaintiffs have failed to state a claim against Aurora.

21       **2.**     **Plaintiffs' Claim Under HOEPA Must Fail.**

22        Plaintiffs' claim under HOEPA fails because Plaintiffs have not plead that HOEPA applies

23  and that the loan in question was a high cost loan as defined by HOEPA.  The first prong of the

24  HOEPA test are loans where the annual percentage rate on first lien loans exceeded the yield on

25  comparable treasury securities by 8%. Reg. Z., 12 C.F.R. §226.32(a)(1)(i).  The second prong of the

26   

---

27  [1] Regulation Z, 12 C.F.R. § 226.2 (17)  *Creditor* means:  (i)  A person (A) who regularly extends consumer credit that is subject to a finance charge or is payable by written agreement in more than four installments (not including a downpayment), and (B) to whom the obligation is initially payable, either on the face of the

28  note or contract, or by agreement when there is no note or contract.

Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1   HOEPA test is whether the loan had points and fees in excess of 8% of the total loan amount.  15

2   U.S.C. §1602(aa)(1)(B). Id.  Plaintiffs set forth no facts showing that the loan was a HOEPA loan

3   under either prong of the HOEPA test.  In re Luciano, 200 Fed.Appx. 628 (9th Cir., 2006) (holding

4   that Plaintiff had failed to allege sufficient facts showing that the loan was subject to HOEPA).

5   Thus, because Plaintiffs have alleged no facts that HOEPA applies to their loan, Plaintiffs' claim

6   for damages under HOEPA must fail.

7        Plaintiffs' general averment that the federal lending statutes have been violated in some

8   manner and that Aurora can be liable is time-barred.  The statute of limitations for damages under

9   TILA and HOEPA is one year from the date the loan documents were executed on December 20,

10  2004. (Compl., Exhibit D & E);  Johnson, supra, 2008 WL 682497, at *3; see also Sparrow v.

11  Interbay Funding, LLC, 2006 WL 284252 (D.D.C. 2006) (slip copy).  Therefore, the statutes of

12  limitations on damages under TILA and HOEPA ran in December of 2005 and Plaintiffs' claim for

13  damages are nearly three years late.

14        **3.    Plaintiffs' Claim Under RESPA Must Fail Because it is Time-Barred**

15        Plaintiffs' claim under RESPA is similarly tardy.  RESPA, 12 U.S.C. § 2614, requires that

16  claims for damages be brought within one year from the date of the occurrence of the violation.

17  Accepting Plaintiffs' general allegation that Plaintiffs' failure to receive non-specified disclosures

18  violated RESPA, the claim is almost three years late because the date of the occurrence of the

19  violation is the date on which the loan closed, or December of 2004. Bloom v. Martin, 865 F.Supp.

20  1377, 1386-87 (N.D.Cal. 1994) aff'd, 77 F.3d 318 (9th Cir. 1996).

21        **4.    Plaintiffs' Claims Under TILA, HOEPA and RESPA Must Fail Because
22             the Three-Year Statutes of Repose have Extinguished any Remaining
             Rights Under the Statutes.**

23        In addition to the one-year limitation on damages claims, TILA, HOEPA and RESPA have

24  a three year statute of repose, after which remaining claims under the respective statutes expire.

25  The three-year time limit for TILA, HOEPA and RESPA claims is jurisdictional.  "A statute of

26  repose is substantive; thus when the statutory period has passed, the right is extinguished." In re

27  Community Bank of Northern Virginia,  467 F.Supp.2d 466, 480 (W.D. Pa. 2006).

28        Plaintiff also could not state a claim under TILA or HOEPA instead of or in addition to a



1    claim for damages.  The Supreme Court, in <u>Beach v. Ocwen Federal Bank</u> found that the plain

2    language of the TILA statute expresses in no uncertain terms that the rights established by TILA

3    shall expire after three years.   <u>Beach v. Ocwen Federal Bank,</u> 523 U.S. 410, 419 (1998).   Any

4    remaining claim under TILA and HOEPA has expired because more than three years has passed

5    since the occurrence of the alleged violation.

6         Like claims under TILA and HOEPA, claims under RESPA must be brought within three

7    years of the violation or they expire.[2]   Although Plaintiffs failed to state what section of RESPA

8    they allege was violated, or what Aurora did or did not do that resulted in a RESPA violation, it is

9    clear that any damages claim is now barred by the one-year statute of limitations and the three-year

10   statute of repose.  <u>Pedraza v. United Guar. Corp.,</u> 114 F.Supp.2d 1347, 1358 (M.D. Ga. 2000).

11        Plaintiffs' fourteenth cause of action under TILA, HOEPA and RESPA, if ever it was

12   viable, now fails because more than three years has passed since the violation giving rise to the

13   claim was committed.

14   **P.    <u>Plaintiffs'  Claim for Relief under Business and Professions Code § 17200 Must
      Fail Because Plaintiffs Cannot Establish the Borrowed Claim.</u>**

15

16        A claim under § 17200 requires the violation of an independent underlying law or statute,

17   frequently called the "borrowed claim."   <u>Cal. Emergency Physicians Med. Group v. Pacificare of</u>

18   <u>Cal.</u>, 111 Cal.App.4 1127, 1123 (2003).  Facts supporting a §17200 claim must be pled with

19   reasonable particularity.  <u>Khoury v. Maly's of California,</u> 14 Cal.App.4th 612, 619 (1993)(demurrer

20   properly sustained because plaintiff alleged no particular violation of the underlying statute and

21   failed to describe the violation with reasonable particularity).  Here, Plaintiff claims that Aurora

22   violated TILA, HOEPA and RESPA because certain disclosures were not given, however Plaintiff

23   _____

24        [2]RESPA, 12 U.S.C. § 2614 provides as follows:  Jurisdiction of courts; limitations:
     Any action pursuant to the provisions of section 2605, 2607, or 2608 of this title may be brought in

25   the United States district court or in any other court of competent jurisdiction, for the district in
     which the property involved is located, or where the violation is alleged to have occurred, within 3

26   years in the case of a violation of section 2605 of this title and 1 year in the case of a violation of
     section 2607 or 2608 of this title from the date of the occurrence of the violation, except that actions

27   brought by the Secretary, the Attorney General of any State, or the insurance commissioner of any
     State may be brought within 3 years from the date of the occurrence of the violation.

28

1    fails to state which ones or why any statute was violated. The general averment in the Complaint is

2    insufficient to give Aurora notice of what violation is alleged to have occurred which supports the

3    § 17200 claim. As a result, the § 17200 claim must fail.

4         The §17200 claim also fails because the underlying alleged TILA, HOEPA and RESPA

5    claims are time-barred by the three-year statute of repose set forth in TILA and HOEPA and

6    RESPA as discussed herein (*supra*). Plaintiff may not use an expired statutory claim to support a

7    claim under § 17200. <u>Silvas v. E*Trade Mortgage Co.</u>, 421 F.Supp2d 1315, 1320 (S.D.Cal. 2006)

8    (holding that §17200 could not revive a stale TILA claim) *affirmed by* <u>Silvas v. E*Trade Mortgage</u>

9    <u>Co.</u>, 514 F.3d 1001 (9th Cir. 2008).

10        Plaintiffs cannot use a failed breach of contract claim to bolster their §17200 claim because

11   §17200 does not reach breaches of contract because they are not violations of law. <u>Accuimage</u>

12   <u>Diagnostics Corp. v. Terarecon, Inc.</u>, 260 F.Supp.2d 941, 954 (N.D.Cal. 2003). Plaintiffs' fifteenth

13   cause of action for violation of §17200 must fail.

14        Plaintiffs' claim under §17200 also fails because it is pre-empted by the Home Owners

15   Loan Act ("HOLA") 12 U.S.C. § 1464, which provides the framework for the chartering and

16   regulation of federal thrifts. (12 U.S.C. § 1464). The Office of Thrift Supervision ("OTS") is

17   charged with the oversight responsibilities of the regulated entities pursuant to HOLA. Aurora is a

18   wholly-owned subsidiary of Lehman Brothers Bank, FSB and both entities are regulated and

19   supervised by the OTS.

20        HOLA occupies the field of the lending operations of its regulated entities. <u>People of</u>

21   <u>California v. Coast Federal Savings and Loan Assoc.</u>, 98 F.Supp. 311 at p. 319 (S.D.Cal.,1951).

22   The Supreme Court recognized the broad application of HOLA to mortgage lending activities in

23   <u>Fidelity Federal Savings and Loan Assoc. v. de la Cuesta</u>, 458 U.S. 141 (1982), holding that "a

24   savings and loan's mortgage lending practices are a critical aspect of its 'operation,' over which the

25   Board unquestionably has jurisdiction." <u>Id</u> at p. 162.

26        The OTS has expressed its intention to occupy the field with respect to the activities of its

27   supervised entities. 12 C.F.R. § 560.2(a). The OTS has enumerated several examples of activities

28   where state laws are expressly pre-empted. 12 C.F.R. § 560.2(b). Two of the stated areas



- 19 -

1  applicable in this case in which state law is expressly pre-empted are:

2           (9) Disclosure and advertising, including laws requiring specific
            statements, information, or other content to be included in credit
3           application forms, credit solicitations, billing statements, credit
            contracts, or other credit-related documents....
4
            (10) Processing, origination, servicing, sale or purchase of, or
5           investment or participation in, mortgages. . . . (ibid.)

6         The OTS has the exclusive authority to regulate the activities of its chartered institutions.

7  Weiss v. Washington Mut. Bank, (2007) 147 Cal.App.4th 72, at p. 75.  "According to the OTS,

8  'when analyzing the status of state laws under [12 C.F.R.] §560.2, the first step will be to determine

9  whether the type of law in question is listed [among the illustrative examples of pre-empted state

10  laws] in paragraph (b) [of 12 C.F.R. § 560.2].  **If so, the analysis will end there; the law is**

11  **preempted. . . .  Any doubt should be resolved in favor of preemption.**" Id. at p. 77.  (emphasis

12  in original).

13         Here, plaintiff is attempting to apply § 17200 to regulate Aurora's activities regarding

14  disclosures required under TILA, HOEPA and RESPA and to Aurora's activities in servicing and

15  participation in mortgages.  The § 17200 statute, as Plaintiffs seeks to have it applied to Aurora,

16  pertains to specifically-enumerated areas of law which are pre-empted by federal law.

17         The Silvas v. E*Trade Mortgage case is directly on point regarding pre-emption of a state

18  law that does not impose requirements upon the regulated entity beyond those already required by

19  TILA. Silvas v. E*Trade Mortgage Corp., supra, 421 F.Supp.2d 1315.  In Silvas, the plaintiffs,

20  putative class representatives, brought claims against E*Trade for violation of § 17500 and §17200,

21  alleging that E*Trade's website and disclosures regarding a non-refundable lock-in fee were false

22  advertising under § 17500 and were an unlawful practice under § 17200.  Id. at p. 1316.  The

23  specific disclosures were governed by TILA.  The court held

24           even though Plaintiff's UCL claims do not seek to impose any requirements on
            Defendant beyond those already provided in TILA, that does not mean that the
25           UCL's application in this instance does not amount to the regulation of Defendant's
            lending activities. . . . Thus, a state's provision of remedies for a violation of federal
26           law amounts to a form of state regulation of the affected area, even if the state does
            not impose any requirements beyond those provided by the federal law.  In an area
27           where federal law preempts an entire field, such state regulation is impermissible."
            Id. at p. 1319-20.
28



- 20 -

1    Here, Plaintiffs claim that the alleged failure to comply with disclosure requirements under

2    TILA, HOEPA and RESPA amount to a violation of § 17200.  The application of the state law in

3    this case to remedy alleged TILA, HOEPA and RESPA violations is an impermissible attempt to

4    regulate the lending activities of Aurora, an OTS- regulated entity, and is thus, pre-empted by

5    federal law.

6    The <u>Silvas</u> court also analyzed the situation where the state law under which the plaintiff

7    made her claims contained procedural differences including more extensive remedies and longer

8    limitations periods, as in the case at hand. <u>Id</u>. at p. 1320.  The <u>Silvas</u> court observed that "a

9    procedural difference between federal and state law is precisely the kind of difference Plaintiffs

10   seek to take advantage of here:  to use California's UCL to remedy TILA violations for which the

11   statute of limitations has already run." <u>Id.</u> at 1321.

12   The <u>Silvas</u> court held that "[p]lainly, this is an attempt to use California's UCL to regulate

13   Defendant's lending activities, to secure damages under state law for alleged TILA violations when

14   a federal cause of action is no longer available.  The application of the UCL to Defendant as a

15   federal thrift is therefore, in this instance, preempted by section 560.2." <u>Id.</u>   The court granted

16   E*Trade's motion to dismiss, holding that California's UCL could not be used against federal

17   thrifts to enforce TILA or remedy TILA violations.  <u>Id</u>. at p. 1321.

18   The facts of <u>Silvas</u> are exactly analogous to the case at hand.  Plaintiffs here cannot assert

19   claims for damages under § 17200 based on TILA, HOEPA and RESPA violations because the

20   statutes of limitations has run and because Plaintiffs' § 17200 claim is pre-empted.

21   **Q.    <u>Plaintiffs' Sixteenth and Seventeenth Causes of Action for Intentional and
       Negligent Infliction of Emotional Distress Must Fail Because Plaintiffs Have
22     Not Pled any Viable Duty Owed by Aurora.</u>**

23   Plaintiffs' claims for intentional and negligent infliction of emotional distress fail because

24   Plaintiffs allege that was a fiduciary duty between Plaintiff and Aurora, as the servicer of Plaintiffs'

25   loan. (Compl. ¶ 116).  Plaintiffs have not pled facts in the mortgage agreement or any other special

26   set of circumstances that establish a fiduciary duty.  *See, e.g.* <u>Webb v. Chase Manhattan Mortg.</u>

27   <u>Corp.</u>, 2007 WL 709335 (S.D.Ohio, March 5, 2007) (slip copy) (holding that the loan servicer owed

28   no fiduciary duty to borrowers with respect to escrow accounts it created.).



1  Plaintiff has not pled a cause of action for intentional or negligent infliction of emotional

2  distress arising outside a fiduciary relationship, as well.

3  **1.    Plaintiffs' claim for Intentional Infliction of Emotional Distress fails**
   **Because Plaintiffs do not Plead that Aurora's Conduct was Extreme or**

4  **Outrageous.**

5  The elements of a cause of action for intentional infliction of emotional distress are (1)

6  extreme and outrageous conduct by the defendant with the intention of causing, or reckless

7  disregard of the probability of causing, emotional distress; (2) the plaintiffs suffering severe or

8  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the

9  defendant's outrageous conduct.  Tekle v. U.S., 511 F.3d 839, 855 (9th Cir. 2007).

10  As to the first element, "in order to be considered outrageous, the conduct must be so

11  extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. "The

12  conduct must be outrageous, i.e., beyond all bounds of decency; ordinary rude or insulting behavior

13  is not enough to justify an award of damages." Id.

14  Plaintiffs have not pled that Aurora's conduct in servicing a loan, attempting to work out a

15  written repayment agreement with Plaintiff, and then resuming foreclosure when the written

16  repayment agreement was breached is extreme or outrageous conduct which would satisfy the first

17  element of the claim or that would permit the award of punitive damages. Plaintiffs were unaware

18  that Aurora had completed the foreclosure sale until several weeks after any alleged misconduct

19  had occurred.  (Compl. ¶ 17).  Aurora simply exercised contractual rights after Plaintiffs' default

20  and its actions in doing so were not extreme or outrageous.  As a result, Plaintiffs' sixteenth cause

21  of action for intentional infliction of emotional distress must fail.

22  **2.    Plaintiffs Have Not Pled that Aurora Owed Any Duty, Thus the Claim**
   **for Negligent Infliction of Emotional Distress Must Also Fail.**

23

24  Aurora did not owe Plaintiffs a duty which would give rise to liability for negligent

25  infliction of emotional distress. "Recovery for negligently inflicted emotional distress is permitted

26  only in cases where a duty arises because (1) there is a special relationship between the parties; (2)

27  the plaintiff is the direct object of the defendant's conduct; (3) the plaintiff is a percipient witness to

28  the results of the defendant's negligent act; or (4) there is a loss of spousal consortium."  Wanetik v.



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1    Mel's of Modesto, 811 F.Supp 1402, 1408-09 (N.D.Cal. 1992). Plaintiffs did not plead any facts

2    that Aurora had a special relationship with them, and the other situations where a duty is imposed

3    have no application in this instance. Plaintiffs fail to state a claim for negligent infliction of

4    emotional distress and the seventeenth cause of action must fail.

5    **R.    The Prayer for Punitive Damages Should be Stricken From the Complaint.**

6        California Civil Code § 3294 governs exemplary and punitive damage claims. Section 3924

7    permits the imposition of punitive damages only "in an action for the breach of an obligation not

8    arising from contract, where it is proven by clear and convincing evidence that the defendant is

9    guilty of fraud, oppression or malice. . . ." Cases based in contract or negligence do not amount to

10   malice, oppression or fraud and will not support an award of punitive damages, no matter how

11   egregious or malicious the breach. Haigler v. Donnelly, 18 Cal.2d 674, 680 (1941); Robinson

12   Helicopter Co. v. Dana Corp. (2003) 105 Cal.App.4th 779, 772-73. Here, Plaintiffs' claims arise

13   solely from the original loan contract, with respect to the alleged statutory violations, and the

14   alleged oral contract and as a result, punitive damages are unavailable. *See* City of Hope Nat.

15   Med. Center v. Genetech, Inc., 43 Cal.4th 375, 398 (2008).

16       Aurora's only remedy for breach of Plaintiffs' repayment obligations was foreclosure and

17   nothing in Aurora's attempts to pursue its only remedy can be construed as oppressive, fraudulent

18   or malicious. *See* Gaffney, *supra*, 200 Cal.App.3d at 1170. Plaintiffs have alleged no viable tort

19   claims in the Complaint which support a claim for punitive damages against Aurora. Plaintiffs'

20   complaint only contains vague, conclusory allegations of fraud and intentional infliction of

21   emotional distress arising from the breach of a non-existent duty Plaintiffs claim is owed.

22   Plaintiffs' allegations do not provide support for the award of punitive damages. Therefore,

23   Plaintiffs' request for punitive damages in the eighth cause of action for fraud and the sixteenth

24   cause of action for intentional infliction of emotional distress and in the prayer at page 22, line 5,

25   should be stricken.

26   **S.    The Entire Complaint Fails Because Plaintiffs' Claims are Uncertain and the**
         **Claims Conflict With the Documents Attached as Exhibits and with other**
27       **Documents Central to Plaintiffs' Claims.**

         Bare allegations and legal conclusions do not satisfy a plaintiff's obligation to provide fair

28



notice to defendants of the claims being made.  The Complaint must at least set forth enough detail so that the defendant and the court have a fair idea of the basis for the complaint and the legal grounds claimed for recovery.  <u>McHenry v. Renne</u>, 84 F.3d 1172, 1174 (9th Cir. 1997).

The Complaint contains averments directly contradicted by documents purportedly attached to the Complaint as exhibits.  While the court is required to accept as true all material allegations in the complaint, the court may disregard factual allegations that are contradicted by facts that may be judicially noticed by the court, such as facts established by reference to documents attached as exhibits to the complaint.  <u>Spreewell</u>, *supra*, 266 F.3d at 988.  The Court may also look beyond the Complaint to documents referenced therein but not attached under the incorporation by reference rule. <u>Van Buskirk v. Cable News Network, Inc.</u>, 284 F.3d 977, 980 (9th Cir. 2002).

Plaintiffs allege that Aurora is the beneficiary under the deed of trust at issue in this case. (Compl. ¶20).  However, the first deed of trust states on its face that the beneficiary is Mortgage Electronic Registration Systems (the $448,000 lien) and AFC is the beneficiary on the second (the $112,000 lien)(Compl. Exhibit E & F).  Plaintiffs allege that there was an oral agreement between Scott Zimmerman and Aurora, yet sufficient facts have not been alleged to escape the bars of the statute of frauds or the parol evidence rule.

Plaintiffs claim that TILA, HOEPA and RESPA were violated, yet fail to state what the violation was and how Aurora is responsible.  The unfair competition claim dependent upon  TILA, HOEPA and RESPA violations lacks any specificity at all.  Similarly, the fraud claims fail to allege the minimum requirements to state a claim because no specifics are alleged.  The tort claims fail because Plaintiffs have not pled a valid duty owed by Aurora.  The entire Complaint should be dismissed because it is vague and uncertain and utterly fails to state a claim against Aurora.

### IV. CONCLUSION

For the foregoing reasons, Aurora respectfully requests that its Motion be granted and that a judgment of dismissal with prejudice be entered.  In addition, or in the alternative, the Motion to Strike Plaintiffs' prayer for punitive damages should be granted.

WHEREFORE, Defendant Aurora prays as follows:

1.  That the Court enter an order granting the Motion to Dismiss without leave to amend and



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1  dismissing the Complaint as to Aurora, with prejudice;

2      2.  That the Court award to Aurora, its attorney's fees and costs incurred herein; and,

3      3.  For such other and further relief as the Court deems just and proper.

4  Dated:  August 26, 2008

5

6                                    SMITH DOLLAR PC

7

8                            By____/S/_____
9                                    Rachel M. Dollar
                                     Attorneys for Defendant Aurora Loan Services,
10                                   LLC, erroneously sued as Aurora Loan Services,
                                     a Lehman Brothers Company

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Memorandum of Points and Authorities in Support of Aurora's Motion to Dismiss and/or to Strike Punitive Damages

1    Rachel M. Dollar, CSB 199977
     SMITH DOLLAR PC
2    Attorneys at Law
     404 Mendocino Avenue, Second Floor
3    Santa Rosa, California 95401
     Telephone:  (707) 522-1100
4    Facsimile:  (707) 522-1101
     Email:  rdollar@smithdollar.com
5
     Attorneys for Defendant Aurora Loan Services, LLC,
6    erroneously sued as Aurora Loan Services,
     a Lehman Brothers Company
7

8                    UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10   SCOTT K ZIMMERMAN, JUDY A              CASE NO.:  C 08-3731 MHP
     ZIMMERMAN,
11                                          DECLARATION OF **CATHY JARBOE** IN
                                            SUPPORT OF DEFENDANT AURORA
                              Plaintiff,    LOAN SERVICES, LLC MOTION TO
12                                          DISMISS AND/OR TO STRIKE PUNITIVE
     v.                                     DAMAGES CLAIM
13
     AURORA LOAN SERVICES, A LEHMAN
14   BROTHERS COMPANY, a business entity;   Judge:  Marilyn H. Patel
     DIABLO FUNDING GROUP
15   INCORPORATED, a California corporation; Date:    October 6, 2008
     FIRST AMERICAN LOANSTAR, a business    Time:    2:00 p.m.
16   entity form unknown; AND ALL PERSONS   Dept:    15, 18th Floor
     UNKNOWN CLAIMING ANY LEGAL OR
17   EQUITABLE RIGHT, TITLE, ESTATE, LIEN   Action Filed:  July 21, 2008
     OR INTEREST IN THE PROPERTY
18   DESCRIBED IN THE COMPLAINT
     ADVERSE TO PLAINTIFFS' TITLE OR ANY
19   CLOUD ON PLAINTIFFS' TITLE THERETO,
     and Does 1 through 50, inclusive,
20
                              Defendants.
21

22

23

24        I, **Cathy Jarboe**, declare:

25

26        1.      I am Cathy Jarboe, Vice President of Loss Mitigation.  I have personal knowledge of

27   the facts set forth herein unless specifically stated otherwise and could testify competently if called

28   as a witness.



2.    On information and belief, Alternative Financing Corporation ("AFC") funded two loans to Plaintiff Scott Zimmerman on December 29, 2004. The first loan was in the amount of $448,00, and the second loan was in the amount of $112,000. Both loans were secured on the property located at 4042 Meadows Lane, Oakley, California (the "Property").

3.    The first lien loan in the amount of $448,000 was boarded at Aurora for servicing in January 27, 2005.

4.    Scott Zimmerman contacted Aurora and requested a repayment agreement which he executed on January 31, 2008 and returned to Aurora. Attached hereto as **Exhibit A** is a true and correct copy of the repayment agreement entered by Scott Zimmerman.

~~5.    Attached hereto as **Exhibit B** is a true and correct copy of the Promissory Note for the $448,000 loan executed by Scott Zimmerman only.~~

6.    Attached hereto as **Exhibit C** is a true and correct copy of the Promissory Note for the $112,000 loan executed by Scott Zimmerman only.

7.    Attached hereto as **Exhibit D** is a true and correct copy of the Deed of Trust securing the $448,000 loan executed by Scott Zimmerman only.

8.    Attached hereto as **Exhibit E** is a true and correct copy of the Deed of Trust securing the $112,000 loan executed by Scott Zimmerman only.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated:    _8-26-08_

By____Cathy Jarboe____

Cathy Jarboe

Cathy Jarboe
Vice President

- 2 -



Exhibit A

01/31/2008  11:06   9256340781                    LAW OFFICE                            P. 03/09
JAN-25-2009 FRI 02:26 PM AURORA LOAN SERVICES         FAX NO. 9255520507         P. 03/09

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800- 14- 1508   FAX: 806-995-2148

## WORKOUT AGREEMENT

### BY AND BETWEEN AURORA LOAN SERVICES

### AND

### Scott K Zimmerman

Property Address: 4042 Meadows Ln          Loan No. 0013965483
                  Oakley CA 94561

This Workout Agreement is made January 24, 2008, by and between AURORA LOAN
SERVICES ("Lender") located at 2617 College Park, Scottsbluff, NE  69361.
and Scott K Zimmerman ("Customer").

  WHEREAS, Lender is the servicing agent and/or the owner and
holder of a certain Note dated 12-17-04, executed and delivered by
Customer, in the original principal amount of $ 462,000 (the "Note").
The Note is secured by a mortgage, deed of trust or comparable security
instrument dated 12-17-04, (the "Security Instrument"), on the property
located at the address specified above (the "Property"). The Note and
Security Instrument are collectively referred to as the "Loan Documents".

  WHEREAS, Customer is in default under the Loan Documents,
has failed to make payment of monthly installments of principal,
interest, and escrow, if any, and has incurred additional expenses
authorized under the Loan Documents, resulting in a total arrearage
now due of $ 27,752.62, as more particularly set forth below:

Unpaid monthly payment(s) of PITI* from 08-01-07 through and including
12-24-08                                          $    24,819.38
  Accrued Late Charges                                     124.36
  NSF Charges                                                .00
  Legal Fees                                              1,112.30
  Corporate Advances**                                    1,546.00
  Other Fees***                                             .00
  Minus Credit (suspense balance/partial payment)          .88
  Total Amount Due (the "Arrearage")             $     27,752.62

---

  * "PITI" means the monthly payment of principal, interest, and escrow,
    required, for taxes and insurance premium installments.
  ** "Corporate Advances" include, but are not limited to, property
    inspection fees, property preservation fees, legal fees, foreclosure
    fees and costs, appraisal fees, BPO (i.e. broker price opinion) fees,
    title report fees, recording fees, and subordination fees.
  *** "Other Fees" include, but are not limited to, short payment advances
    and Speed ACH fees.



AURORA LOAN SERVICES LLC.

01/31/2008 11:05  9265340781
JAN-31-2008 FRI 02:28 PM AURORA LOAN SERVICES      FAX NO. 9265520507                    P. 04/08

## AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE 800-  -1 908   FAX:303-485-2145

Loan No. 0018965483                                                    Page 2 of 5

WHEREAS, as a result of Customer's default, Lender (i) has the right to accelerate, and to require Customer to make immediate payment in full, all of the sums owed under the Note and secured by the Security Instrument, (ii) has so accelerated and declared due in full all such sums, and (iii) may have already commenced foreclosure proceedings to sell the Property.

WHEREAS, as of the date of execution of the Agreement, Lender commenced Foreclosure proceedings to sell the property on 10/15/07 by legal filing in the county and state where the Property is located A Foreclosure sale has been scheduled for 02/19/08.

WHEREAS, customer has requested Lender's forbearance in exercising its rights and remedies under the default provisions of the Loan Documents and with regard to any foreclosure action that may now be pending.

WHEREAS, Customer has requested and Lender has agreed to allow Customer to repay the Arrearage pursuant to a loan workout arrangement on the terms set forth herein.

NOW, THEREFORE, in consideration of the promises and mutual covenants herein contained, the parties hereto agree as follows:

1. Term. This Agreement shall expire on the 'Expiration Date,' as defined in Attachment A.

1. Lenders Forbearance. Lender shall forbear from exercising any or all of its rights and remedies now existing or arising during the term of this Agreement under the Loan Documents, provided there is no Default, as such term is defined in paragraph 5.

2. Customer's Admissions. Customer admits that the Arrearage is correct and is currently owing under the Loan Documents, and represents, agrees and acknowledges that there are no defenses, offsets, or counterclaims of any nature whatsoever to any of the Loan Documents or any of the debt evidenced or secured thereby.

Customer admits and agrees that any and all postponements of a foreclosure sale, made during the term of this Agreement or in anticipation of this Agreement, are done by mutual consent of the Customer and Lender and that, to the extent allowed by applicable law, any such foreclosure sale may be postponed from time to time until the loan evidenced by the Note is fully reinstated or the foreclosure sale is consummated. Lender shall be under no obligation to dismiss a pending foreclosure proceeding until such time as all terms and conditions of this Agreement and Attachment A have been fully performed.

4. Terms of Workout. See Attachment A, which is made a part hereof.


LENDER   AURORA LOAN SERVICES LLC.

LAW OFFICE

01/31/2008  11:06    9256348781
JAN-E -2008 FRI 02:28 PM AURORA LOAN SERVICES        FAX NO. 925552050!        P. 05/09

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE (800) ... • FAX 303-635-3146

Loan No. 0016965483                                                    Page 3 of 5

    5.  Default.  If Customer fails to make any of the payments
specified in Attachment A on the due dates and in the amount stated, or
otherwise fails to comply with any of the terms and conditions herein or
therein (any such even hereby defined as a "Default"), Lender, at its
sole option, may terminate this Agreement without further notice to
Customer.  In such case, all amounts that are then owing under the Note,
the Security Instrument, and this Agreement shall become immediately due
and payable, and Lender shall be permitted to exercise any and all
rights and remedies provided for in the Loan Documents, including, but
not limited to, immediate commencement of a foreclosure action or
resumption of a pending foreclosure action without further notice to
Customer.

    6.  No Waiver.  Nothing contained herein shall constitute a waiver
of any of all of the Lender's rights or remedies, including the right
to commence or resume foreclosure proceedings.  Failure of Lender to
exercise any right or remedy under this Agreement or as otherwise
provided by applicable law shall not be deemed to be a waiver thereof.1

    7.  Status of Default and Foreclosure.  Customer acknowledges that
if the Lender previously notified the Customer that the account was in
default, that the Note and Security Instrument are accelerated and
the debt evidenced by the Note is due in full, the account remains in
default, such Loan Documents remain accelerated, and such debt due in
full, although Customer may be entitled by law to cure such default by
bringing the loan evidenced by Note current rather than paying it in
full.  Lender's acceptance of any payments from Customer which,
individually, are less than the total amount due to cure the default
described herein shall in no way prevent Lender from continuing with
collection action, or require Lender to re-notify Customer of such
default, re-accelerate the loan, re-issue any notice, or restart any
process prior to Lender proceeding with collection action if Customer
defaults.  Customer agrees that a foreclosure action if commenced by
the Lender against Customer will not be withdrawn unless Lender
determines to do so by applicable law.  In the event Customer defaults,
the foreclosure will commence, or resume from the point at which it
was placed on hold, without further notice.

    8.  Limited Modification.  Except as otherwise provided in this
Agreement, the Note and Security Instrument, and any amendments
thereto, are ratified and confirmed and shall remain in full force and
effect.

1 A typical example of this would be if Lender decides to accept a partial
or untimely payment from Customer instead of returning such payment or
terminating this Agreement as provided herein, Lender shall not be
precluded from rejecting a subsequent partial or untimely payment,
terminating this Agreement, or taking any other action permitted by
applicable law.



EQUAL HOUSING
LENDER        AURORA LOAN SERVICES LLC.

LAW OFFICE
01/31/2008  11:05    9255340701
JHN 31 2008 FRI 02:29 PM AURORA LOAN SERVICES    FAX NO. 8255520507    P. 06/08

## AURORA LOAN SERVICES

10350 PARK MEADOWN DRIVE • LITTLETON, CO 80124 • PHONE 800 • • 850 • • FAX: 303-633-5145

Loan No. 0018965483          Page 4 of 5

9. **Application of Payments.** The payments received by Lender from Customer pursuant to this Agreement shall be applied, at Lender's sole option, first to the earliest monthly payment under the Note that is due. Any amounts received by Lender that are less than the full payment under then due and owing under this Agreement shall be, at Lender's sole option, (1) returned to Customer, or (2) held by Lender in partial or suspense payment balance until sufficient sum is received by Lender to apply a full payment. If this Agreement is canceled and/or terminated for any reason, any remaining funds in this partial or suspense payment balance shall be credited towards Customer's remaining obligation owing in connection with the loan and shall not be refunded.

10. **Methods of Making Payments.** All payments made to Lender under this Agreement shall (i) contain the Lender's loan number shown above, (ii) unless otherwise agreed to by the Lender, be payable in certified funds by means of cashier's check, Western Union (code citys Bluff, NE) money order, or certified check, and (iii) be sent to AURORA LOAN SERVICES as specified in Attachment A. Any payment made other than strictly pursuant to the requirements of this paragraph 10 and Attachment A shall not be considered to have been received by Lender, although Lender may, in its sole discretion, decide to accept any non-conforming payment.

11. **Credit Reporting.** The payment status of Customer's loan in existence immediately prior to execution of this Agreement will be reported monthly to all credit reporting agencies for the duration of this Agreement and thereafter. Accordingly, Lender will report the loan subject to this Agreement as delinquent if the loan is not paid current under the Loan Documents, even if Customer makes timely payments to Lender under this Agreement. However, Lender may disclose that Customer is in a repayment or work-out plan. This Agreement does not constitute an agreement by Lender to waive any reporting of the delinquency status of loan payments.

12. **Property Taxes, Insurance, and Other Amounts.** If the Customer's loan is not escrowed for taxes and insurance premium payments, it is Customer's responsibility to pay all property taxes, premiums for insurance, and all other amounts Customer agreed to pay as required under the terms of the Loan Documents. Customer's failure to pay property taxes, amounts owed on any senior lien security instrument, other amounts that may attain priority over the Security Instrument, or insurance premiums, in each case before their due date, shall constitute a Default hereunder.

13. **The Entire Agreement.** This Agreement sets forth all of the promises, covenants, agreements, conditions and understandings between the parties hereto with respect to the subject matter hereof. This Agreement supersedes all prior understandings, inducements or conditions, express or implied, oral or written, with respect thereto except as contained or referred to herein. This Agreement may not be modified, waived, discharged or terminated orally but only by an instrument in writing.

AURORA LOAN SERVICE LLC

JAN-31-2008 FRI 02:28 PM AURORA LOAN SERVICES    FAX NO. 9255520507

# AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE 800-714-508 • FAX 303-706-3146

Loan No. 0018955423                                          Page 5 of 5

14.  **Time is of the Essence.** The Customer agrees and understands that TIME IS OF THE ESSENCE as to all of the Customer's obligations under this Agreement. The grace period for monthly payments under the Loan Documents will not apply to payment under this Agreement. Therefore, the Lender must receive the payments under this Agreement on or before the Due Dates specified in Attachment A.

15.  **Assignment by Customer Prohibited.** This Agreement shall be non-transferable by Customer. However, if the legal or beneficial interest or the servicing of the this loan is transferred by Lender, this Agreement inures to the benefit of any subsequent servicer or beneficial interest holder of the Note.

16.  **Severability.** To the extent that any word, phrase, clause, or sentence of this Agreement shall be found to be illegal or unenforceable for any reason, such word, phrase, clause or sentence shall be modified or deleted in such a manner so as to make the Agreement, as modified, legal and enforceable under applicable law, and the balance of the agreement or parts thereof shall not be affected thereby, the balance being construed as severable and independent; provided that no such severability shall be effective if it materially changes the economic benefit of this Agreement to either part.

17.  **Execution in Counterparts.** This Agreement may be executed and delivered in two or more counterparts, each of which, when so executed and delivered, shall be an original, but such counterparts shall together constitute but one and the same instrument and Agreement. Facsimile signatures shall be deemed as valid as original.

18.  **Customer Contact.** If Customer has any questions regarding his matter, Customer should contact one of Lender's Loan Counselors at the address above or by calling 800-550-0509.

IN WITNESS HEREOF, the parties hereto have caused this Agreement to be fully executed as of the date signed.

Dated:  1-31-08                              _____
                                              Scott K. Zimmerman Borrower

Dated: _____    _____
Aurora Loan Services
Dated: _____

Aurora Loan Services is a debt collector. Aurora is attempting to collect a debt and any information obtained will be used for that purpose. However, if you are in bankruptcy or received a bankruptcy discharge of this debt, this communication is not an attempt to collect the debt against you personally, but is notice of a possible enforcement of the lien against the collateral property.



LENDER    AURORA LOAN SERVICES LLC

01/31/2008  11:05    9255340761                              LAW OFFICE                    P. 08/09
JAN-2-2008 FRI 02:30 PM AURORA LOAN SERVICES        FAX NO. 9255520507

## AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE: 800-587-7500 • FAX: 303-635-3140

### ATTACHMENT A - REPAYMENT PLAN

a.1    For purposes of repayment of the Arrearage, Customer shall remit
an initial installment of $4153.33, which will be due on
or before 01/31/2008.  Consecutive monthly payments each in the
amount of $4153.33 will be due on or before the 29th
day of every month (each, a "Due Date"), commencing 01/29/2008
continuing through and including 04/29/2008, with the last
installment in the amount of $27382.62.

On or before 01/31/2008 (the "Agreement Return Date"),
Customer shall execute and return the Agreement, including this
Attachment A, in accordance with the following instructions:

| Overnight Mail: | USPS Mail: |
|---|---|
| Aurora Loan Services | Aurora Loan Services |
| Attention: Home Retention | Attention: Home Retention |
| 2617 College Park | P.O. Box 1706 |
| Scottsbluff, NE 69361 | Scottsbluff, NE 69363-1706 |

The Agreement will be of no force and effect unless Lender receives
the executed Agreement, including Attachment A, as well as the first
Plan payment by the Agreement Return Date.  Customer shall remit
to Lender the first Plan payment, in the amount specified above,
made payable to Aurora Loan Services in certified funds by
means of cashier's check, money order, Western Union (code city:
Bluff, NE), or certified check.  All Plan payments, including the
first Plan payment, shall contain the Lender's loan number shown
in the Agreement and, unless otherwise agreed to by the Lender,
shall be payable in certified funds as described above and are to be
sent to Lender's Payment Processing Center in accordance with the
following instructions:

| Overnight Mail: | USPS Mail: |
|---|---|
| Aurora Loan Services | Aurora Loan Services |
| Attention: Cashiering | Attention: Cashiering |
| 10350 Park Meadows Drive | P.O. Box 5180 |
| Littleton, CO 80124 | Denver, CO 80217-5180 |

a.2    The amount of each Plan payment specified above includes both
(1) the regularly scheduled monthly payment, plus
(2) the portion of the Arrearage specified above.
Plan payments are to be paid on or before the 29th day
of every month (each, a "Due Date").  Lender must receive each
Plan payment by the Due Date of each month.  The Agreement
shall expire on the Due Date of the last Plan payment
contemplated by section a.1 above (the "Expiration Date").

b.     In the event Customer cures the Arrearage by making all Plan
payments on or before the Expiration Date, and is current with the
payments then due, and no default then exists under the Loan
Documents and the Agreement, Lender shall consider the Note and
Security Instrument to be current and in effect according to their
original terms and conditions.  Monthly billing statements that
Customer shall receive thereafter will reflect the current status
of the loan evidenced by the Note and Customer's regular monthly
payment amount.  Customer agrees to then resume making the



AURORA LOAN SERVICES LLC

01/31/2008  11:06   9256340781                     LAW OFFICE                         P. 09/09
JAN-3-2008 FRI 02:39 PM AURORA LOAN SERVICES       FAX NO. 9255520507

## AURORA LOAN SERVICES

10350 PARK MEADOWS DRIVE • LITTLETON, CO 80124 • PHONE:303-714-0281 • FAX:303-635-2185

Loan No: 0018965483

regular monthly payments required under the Note. Due to
adjustments that periodically occur to tax and insurance premium
payments, and, if applicable, in interest rates or adjustable rate
mortgage loans, over the course of an agreement such as this one
it is possible that some adjustment to the regularly scheduled
monthly payments under the Note may occur which could impact
the cure of the Arrearage. Customer acknowledges that this may
occur and that an adjustment may be necessary to the final Plan
payment that will be due at the Expiration Date. In the event such
an adjustment is necessary, the Note and Security Instrument shall
not be considered current until Customer has paid any additional
amounts required to cure the Arrearage as a result of the
adjustment(s).

IN WITNESS HEREOF, the parties hereto have caused this Attachment A
to be duly executed as of the date signed below.

Dated:  1-31-08 _____   _____
                                     Scott K Zimmerman Borrower

Dated: _____   _____

Aurora Loan Services

Dated: _____   _____

AURORA LOAN SERVICES LLC.

Exhibit C

MIN: 1003151-0004121406-1
Loan Number 04121406
SANTA CLARA , California

## NOTE

DECEMBER 17, 2004

4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561
Property Address

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $112,000.00        (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is ALTERNATIVE FINANCING CORPORATION, A CALIFORNIA CORPORATION (DRE/CFL # 01225126)
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

**2.    INTEREST**

I will pay interest at a yearly rate of        10.990        %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

**3.    PAYMENTS**

I will pay principal and interest by making payments each month of U.S. $1,065.76
I will make my payments on the        1st        day of each month beginning on FEBRUARY 1
, 2005        . I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on JANUARY 1, 2035
, I still owe amounts under this Note, I will pay all those amounts, in full, on that date,        2 CO.
I will make my monthly payments at 451 EL CAMINO REAL, SUITE 205, SANTA CLARA,
CALIFORNIA 95050                                                                          a different place if
required by the Note Holder.

**4.    BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of 15
calendar days after the date it is due, I will promptly pay a late charge to the Note Holder. The amount of the charge will be 5.000 %        of my overdue payment, but not less than U.S. $5.00        and not more than U.S.
$53.29        . I will pay this late charge only once on any late payment.
(B) Notice From Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.
(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
(D) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses included, for example, reasonable attorney's fees.

**5.    THIS NOTE SECURED BY A DEED OF TRUST**

In addition to the protections given to the Note Holder under this Note, a Deed of Trust, dated the same day as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Deed of Trust describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

Some of these conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.
If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

**6.    BORROWER'S PAYMENTS BEFORE THEY ARE DUE    ** See attached Prepayment Note Addendum.**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known

CALIFORNIA SECOND MORTGAGE   - 6/84 - FNMA/FHLMC UNIFORM INSTRUMENT                    Form 3905 6/84
Doxmen System, Inc. (800) 649-1362.
Borrower Initials:

as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

### 7.    BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promise under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

### 8.    GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

### 9.    RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

NOTICE TO BORROWER:  Do not sign this Note if it contains blank spaces. All spaces should be completed before you sign.

| | | | |
|---|---|---|---|
| SCOTT K. ZIMMERMAN    12-20-04 | | | |
| Borrower _____ Date | | Borrower _____ Date | |
| Borrower _____ Date | | Borrower _____ Date | |
| Borrower _____ Date | | Borrower _____ Date | |

(Sign Original Only)

---

CALIFORNIA-SECOND MORTGAGE - 6/84 - FNMA/FHLMC UNIFORM INSTRUMENT          Form 3905 6/84
Document Systems, Inc. (800) 649-1362

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: 04121406

Date: DECEMBER 17, 2004

Borrower(s): SCOTT K. ZIMMERMAN

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 17th day of DECEMBER, 2004 , and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of ALTERNATIVE FINANCING CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 6 of the Note is amended to read in its entirety as follows:

## 6 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within TWELVE ( 12 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

CALIFORNIA PREPAYMENT ADDENDUM TO NOTE
(CIVIL CODE PROVISION)
8/03                                    Page 1 of 2

DocMagic ℰℱℴℛℳℴ 800-649-1362
www.docmagic.com

Cdprca.ppf.1.xm

If the Note contains provisions for a variable interest rate, and the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum.

| | |
|---|---|
| Borrower  SCOTT K. ZIMMERMAN          Date   12-20-04 | Borrower                          Date |
| Borrower                          Date | Borrower                          Date |
| Borrower                          Date | Borrower                          Date |

CALIFORNIA PREPAYMENT ADDENDUM TO NOTE
(CIVIL CODE PROVISION)
6/03                                    Page 2 of 2

DocMagic €Forms  800-649-1362
www.docmagic.com

Capdm.ppf.2.bm

Loan Number: 04121405

# ADDENDUM TO NOTE

This addendum is made DECEMBER 17, 2004        and is incorporated into and deemed to amend and supplement the Adjustable Rate Note of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561

## AMENDED PROVISIONS

In addition to the provisions and agreements made in the Note, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than        10.125 % or less than        7.125 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than ONE AND 000/1000                        percentage point(s) (        1.000  %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than        14.125 %. My interest rate will never be less than        7.125 %.

## UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                        Page 1 of 2                        DocMagic *eFerms* 800-849-1362
www.docmagic.com

1201.als.1.um

In Witness Thereof, Trustor has executed this addendum.

Witness
_____

12-20-04

Borrower Signature SCOTT K.                  Date        Borrower Signature                  Date
ZIMMERMAN


Borrower Signature                  Date        Borrower Signature                  Date


Borrower Signature                  Date        Borrower Signature                  Date

LIBOR ADDENDUM TO NOTE
FORM 1201 1-01                                Page 2 of 2                    DocMagic eForms 800-649-1362
                                                                            www.docmagic.com

1201.als.2.tem

Loan Number 04121405

# PREPAYMENT NOTE ADDENDUM
## (Multi-State)

This Prepayment Note Addendum is made this **17th** day of **DECEMBER, 2004** and is incorporated into and shall be deemed to amend and supplement the Note of the same date (the "Note") made by the undersigned (the "Borrower") to evidence indebtedness to **ALTERNATIVE FINANCING CORPORATION, A CALIFORNIA CORPORATION** (the "Lender"), which debt is secured by a Mortgage or Deed of Trust or comparable security instrument (the "Security Instrument") of the same date and covering the property described in the Security Instrument and located at **4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561**

(the "Property").

**Additional Covenants.** Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender covenant, and agree that, the provisions of the section of the Note entitled "BORROWER'S RIGHT TO PREPAY" are amended to read as follows:

Subject to the Prepayment penalty provided below, I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." A "Full Prepayment" is the prepayment of the entire unpaid Principal due under the Note. A payment of only part of the unpaid Principal is known as a "Partial Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

**If, within the 12 month(s) period beginning with the date I execute the Note (the "Penalty Period"), I make a Full Prepayment, or Partial Prepayment in any twelve (12)-month period that exceeds 20% of the original Principal loan amount, I will pay a Prepayment charge as consideration for the Note Holder's acceptance of such Prepayment. The Prepayment charge will equal the amount of interest that would accrue during a six (6)-month period on the amount prepaid that exceeds 20% of the original Principal balance of the Note, calculated at the rate of interest in effect under the terms of the Note at the time of the Prepayment, unless otherwise prohibited by applicable law or regulation. No Prepayment charge will be assessed for any prepayment occurring after the Penalty Period.**

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first **12** month(s) of the term of the Note, no Prepayment penalty will be assessed. In that event, I agree to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

The Note Holder will apply all Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a Partial Prepayment, there will be no change in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If my Note is an Adjustable Rate Note, Partial Prepayments may reduce the amount of my monthly payment after the first interest rate Change Date following the Partial Prepayment. However, any reduction due to my Partial Prepayment may be offset by an interest rate increase.

DocMagic €Rooms 800-549-1362
www.docmagic.com

Us603b11.sla

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be payable on demand.

All other provisions of the Note are unchanged and remain in full force and effect.

**NOTICE TO BORROWER**

Do not sign this Addendum before you read it. This Addendum provides for the payment of a Prepayment charge if you wish to repay the loan prior to the date provided for repayment in the Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED:

_____ (Seal)         _____ (Seal)
SCOTT K. ZIMMERMAN                    -Borrower                                          -Borrower

_____ (Seal)         _____ (Seal)
                                      -Borrower                                          -Borrower

_____ (Seal)         _____ (Seal)
                                      -Borrower                                          -Borrower

MULTI-STATE PREPAYMENT NOTE ADDENDUM
FORM 6038I 1-01          Page 2 of 2          DocMagic eForms 800-649-1362
www.docmagic.com

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE PROMISSORY NOTE

Loan Number: 04121405

Property Address: 4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561

**THIS ADDENDUM** is made this 17th day of DECEMBER 2004 , and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to ALTERNATIVE FINANCING CORPORATION, A CALIFORNIA CORPORATION (the Lender).

**THIS ADDENDUM** supersedes Sections 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay interest by making payments every month for the first 60 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 300 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on FEBRUARY 1, 2005. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. If, on JANUARY 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 451 EL CAMINO REAL, SUITE 205, SANTA CLARA, CALIFORNIA 95050 , or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,660.00 . This payment amount is based on the original principal balance of the Note. This payment amount may change.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 875/1000 percentage point(s) ( 5.875 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the

603ei.als

Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

## 7.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be 5.000 % of my overdue payment of interest during the Interest-Only Period, 5.000   % of my overdue payment of principal and interest thereafter.  I will pay this late charge promptly but only once on each late payment.

12-20-04

_____    _____
Borrower              Date         Borrower              Date
SCOTT A. ZIMMERMAN

_____    _____
Borrower              Date         Borrower              Date

_____    _____
Borrower              Date         Borrower              Date

800-649-1362
www.docmagic.com


## EXHIBIT "A" LEGAL DESCRIPTION

LOT 7, AS SHOWN ON THE MAP OF SUBDIVISION 6840, FILED JUNE 12, 1991, IN MAP BOOK 357, PAGE 27, CONTRA COSTA COUNTY RECORDS.

EXCEPTING THEREFROM:

1. "AN UNDIVIDED ONE-HALF (1/2) INTEREST IN AND TO ALL OIL, GAS, CASINGHEAD GAS, SHALE, COAL, PHOSPHATE, SODIUM, GOLD, SILVER AND ALL OTHER HYDROCARBONS, HYDROCARBON SUBSTANCES, METAL AND MINERALS, WHETHER METALLIC OR NON-METALLIC, TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES, BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY PART OF SAID LAND WITHIN 500 FEET OF SAID SURFACE," AS RESERVED IN THE DEED FROM PETER GIANNOTTI, EXECUTOR OF THE WILL OF VICTOR BALDOCCHI, DECEASED, RECORDED MARCH 21, 1972, BOOK 6612, PAGE 257, OFFICIAL RECORDS.

2. "AN UNDIVIDED 1/2 INTEREST IN AND TO ALL OIL, GAS, CASINGHEAD GAS AND OTHER HYDROCARBON AND MINERAL SUBSTANCES BELOW A POINT 500 FEET BELOW THE SURFACE OF SAID LAND TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE, PASS THROUGH AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES, BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND," AS RESERVED IN THE DEED FROM TONY CUTINO, ET AL, RECORDED APRIL 4, 1978, BOOK 8776, PAGE 497, OFFICIAL RECORDS.

# PREPAYMENT RIDER

Loan Number: 04121406

Date: DECEMBER 17, 2004

Borrower(s): SCOTT K. ZIMMERMAN


THIS PREPAYMENT RIDER (the "Rider") is made this 17th day of DECEMBER , 2004 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of ALTERNATIVE FINANCING CORPORATION

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

### 4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561
[Property Address]


ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A.    PREPAYMENT CHARGE
The Note provides for the payment of a prepayment charge as follows:

### 6    . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

DocMagic €Ferms 800-649-1362
www.docmagic.com

Cspr.ppf.1.tem

If within TWELVE        ( 12    ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds  TWENTY
percent (      20.000 %) of the original principal amount of the loan, I will pay a
Prepayment charge in an amount equal to SIX       ( 6    ) months' advance
interest on the amount by which the total of my Prepayments within any 12-month period
exceeds TWENTY            percent (   20.000  %) of the original principal
amount of the loan.

     If the Note contains provisions for a variable interest rate, and the purpose of the
loan is to finance the purchase or construction of real property containing four or fewer
residential units or on which four or fewer residential units are to be constructed, then I
may prepay the loan in whole or in part without a Prepayment charge within 90 days of
notification of any increase in the rate of interest.

     BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this
Rider.

12-20-04

_____ (Seal)          _____ (Seal)
SCOTT K. ZIMMERMAN    -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                      -Borrower                                -Borrower

DocMagic €Forms 800-649-1362
www.docmagic.com

Loan Number: 04121405

# ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made DECEMBER 17, 2004      and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561**

## AMENDED PROVISIONS
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

## ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES
**Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **10.125** % or less than **7.125** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **ONE AND 000/1000** percentage point(s) ( **1.000** %) from the rate of interest I have been paying for the preceding six (6) months. My interest rate will never be greater than **14.125** %. My interest rate will never be less than **7.125** %.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

LIBOR ADDENDUM TO ADJUSTABLE RATE RIDER
FORM 1202 1-01          Page 1 of 2          DocMagic eFERMS 800-649-1362
www.docmagic.com

In Witness Thereof, Trustor has executed this addendum.

_____
Witness

_____        _____
Borrower Signature SCOTT K.      Date   Borrower Signature        Date
ZIMMERMAN

_____        _____
Borrower Signature        .Date        Borrower Signature        Date

_____        _____
Borrower Signature        Date         Borrower Signature        Date

# INTEREST-ONLY ADDENDUM
# TO ADJUSTABLE RATE RIDER

Loan Number: 04121405

Property Address: 4042 MEADOWS LANE, OAKLEY, CALIFORNIA 94561

**THIS ADDENDUM** is made this 17th    day of DECEMBER, 2004          , and is
incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to ALTERNATIVE FINANCING
CORPORATION, A CALIFORNIA CORPORATION

(the Lender).

**THIS ADDENDUM** supersedes Section 4(C) of the Rider. None of the other provisions of the Note are
changed by this Addendum.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   **(C) Calculation of Changes**
   Before each Change Date, the Note Holder will calculate my new interest rate by adding
**FIVE AND 875/1000**                      percentage point(s) (    **5.875** %) to
the Current Index for such Change Date. The Note Holder will then round the result of this addition to the
nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date.
   During the Interest-Only Period, the Note Holder will then determine the amount of the monthly
payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment
until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary
prepayment of principal during such period. If I make a voluntary prepayment of principal during the
Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary
to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only
Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly
payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end
of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining
term of the Note. The result of this calculation will be the new amount of my monthly payment. After the
end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

603f.aja.1.tem

_____ (Seal)          _____ (Seal)
SCOTT K. ZIMMERMAN     -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower


_____ (Seal)          _____ (Seal)
                       -Borrower                                -Borrower

# TRUTH-IN-LENDING DISCLOSURE STATEMENT
### (THIS IS NEITHER A CONTRACT NOR A COMMITMENT TO LEND)

| | | |
|---|---|---|
| Applicants: | SCOTT ZIMMERMAN | Prepared By: ALTERNATIVE FINANCING CORPORATION |
| | | 451 EL CAMINO REAL SUITE 205 |
| Property Address: | 4042 MEADOW LANE | SANTA CLARA , CA 95050 |
| | Oakley , CA 94561 | 408-554-8000 |
| Application No: | 04121405 | Date Prepared: 12/14/2004 |

| ANNUAL PERCENTAGE RATE | FINANCE CHARGE | AMOUNT FINANCED | TOTAL OF PAYMENTS |
|---|---|---|---|
| The cost of your credit as a yearly rate | The dollar amount the credit will cost you | The amount of credit provided to you or on your behalf | The amount you will have paid after making all payments as scheduled |
| * 7.854 % | $ * 717,778.76 | $ * 442,486.44 | $ * 1,160,264.20 |

☐ **REQUIRED DEPOSIT:** The annual percentage rate does not take into account your required deposit
**PAYMENTS:** Your payment schedule will be:

| Number of Payments | Amount of Payments** | When Payments Are Due | Number of Payments | Amount of Payments** | When Payments Are Due | Number of Payments | Amount of Payments ** | When Payments Are Due |
|---|---|---|---|---|---|---|---|---|
| | | Monthly Beginning: | | | Monthly Beginning: | | | Monthly Beginning: |
| 24 | 2,862.00 | | | | | | | |
| 12 | 3,081.62 | | | | | | | |
| 323 | 3,260.89 | | | | | | | |
| 1 | 3,270.29 | | | | | | | |

☐ **DEMAND FEATURE:** This obligation has a demand feature.
☐ **VARIABLE RATE FEATURE:** This loan contains a variable rate feature. A variable rate disclosure has been provided earlier.

**CREDIT LIFE/CREDIT DISABILITY:** Credit life insurance and credit disability insurance are not required to obtain credit, and will not be provided unless you sign and agree to pay the additional cost.

| Type | Premium | Signature |
|---|---|---|
| Credit Life | | I want credit life insurance. Signature: |
| Credit Disability | | I want credit disability insurance. Signature: |
| Credit Life and Disability | | I want credit life and disability insurance. Signature: |

**INSURANCE:** The following insurance is required to obtain credit:
☐ Credit life insurance  ☐ Credit disability  ☑ Property insurance  ☐ Flood insurance
You may obtain the insurance from anyone you want that is acceptable to creditor
☐ If you purchase  ☑ property  ☐ flood insurance from creditor you will pay $ _____ for a one year term.
**SECURITY:** You are giving a security interest in: 4042 MEADOW LANE, Oakley CA 94561
☐ The goods or property being purchased  ☑ Real property you already own.
**FILING FEES:** $ 80.00
**LATE CHARGE:** If a payment is more than  30 days late, you will be charged  5.000 % of the payment
**PREPAYMENT:** If you pay off early, you
☑ may  ☐ will not  have to pay a penalty.
☐ may  ☑ will not  be entitled to a refund of part of the finance charge.
**ASSUMPTION:** Someone buying your property
☐ may  ☐ may, subject to conditions  ☑ may not  assume the remainder of your loan on the original terms.
See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties
☑ * means an estimate  ☑ all dates and numerical disclosures except the late payment disclosures are estimates.

** NOTE: The payments shown above include reserve deposits for Mortgage Insurance (if applicable), but exclude Property Taxes and Insurance.

THE UNDERSIGNED ACKNOWLEDGES RECEIVING A COMPLETED COPY OF THIS DISCLOSURE.

| | | | |
|---|---|---|---|
| _(signature)_ 12-2004 | | _____ | |
| SCOTT ZIMMERMAN (Applicant) (Date) | | (Applicant) (Date) |
| | | _____ | |
| (Applicant) (Date) | | (Applicant) (Date) |
| _(signature)_ 12-2004 | | | |
| (Lender) (Date) | | | |

Calyx Form - til.hp (03/95)

Exhibit D

5490132 4

## North American Title Co.

Recording Requested By:
ALTERNATIVE FINANCING CORPORATION

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2004-0497867-00**

Acct 9- North American Title
**Wednesday, DEC 29, 2004 08:00:00**
MIC    $1.00|MOD    $23.00|REC    $27.00
TCF    $22.00|DAF    $1.80|REF    $0.20

**Ttl Pd    $75.00**            Nbr-0002495246
rrc/R2/1-23

And After Recording Return To:
ALTERNATIVE FINANCING CORPORATION
451 EL CAMINO REAL, SUITE 205
SANTA CLARA, CALIFORNIA 95050
Loan Number: 04121405

——————————— [Space Above This Line For Recording Data] ———————————

# DEED OF TRUST

MIN: 1003151-0004121405-3

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated DECEMBER 17, 2004, together with all Riders to this document.
(B) "Borrower" is SCOTT K. ZIMMERMAN, A MARRIED MAN AS HIS SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
(C) "Lender" is ALTERNATIVE FINANCING CORPORATION

Lender is a CALIFORNIA CORPORATION                                                    organized
and existing under the laws of CALIFORNIA
Lender's address is 451 EL CAMINO REAL, SUITE 205, SANTA CLARA, CALIFORNIA 95050

(D) "Trustee" is NORTH AMERICAN TITLE
2530 SAND CREEK ROAD, BRENTWOOD , CALIFORNIA 94513

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.**
(F) "Note" means the promissory note signed by Borrower and dated DECEMBER 17, 2004
The Note states that Borrower owes Lender FOUR HUNDRED FORTY-EIGHT THOUSAND AND 00/100                                      Dollars (U.S. $ 448,000.00    ) plus interest.

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 1 of 14

*DocMagic* ☎*Forms* 800-649-1362
*www.docmagic.com*

Ca3005.mzd 1 tem

497867

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
JANUARY 1, 2035 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | ADDENDUM TO ADJUSTABLE RIDER, INTEREST ONLY ADDENDUM TO RIDER, PREPAYMENT RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY of          CONTRA COSTA          :
[Type of Recording Jurisdiction]          [Name of Recording Jurisdiction]

Ca3005.mzd 2 tem

497867

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. #: 033-320-007

which currently has the address of  4042 MEADOWS LANE
                                                    [Street]

OAKLEY                          , California    94561        ("Property Address"):
   [City]                                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security
Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors
and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose
and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling
this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right
to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record.
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any
encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with
limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
   1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall
pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late
charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due
under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid,
Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in
one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check,
treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured
by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other
location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return
any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender
may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights
hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

DocMagic eForms  800-649-1362
www.docmagic.com

Ca3005 mzd 3 tem

## EXHIBIT "A" LEGAL DESCRIPTION

497867

LOT 7, AS SHOWN ON THE MAP OF SUBDIVISION 6840, FILED JUNE 12, 1991, IN MAP BOOK 357, PAGE 27, CONTRA COSTA COUNTY RECORDS

EXCEPTING THEREFROM:

1 "AN UNDIVIDED ONE-HALF (1/2) INTEREST IN AND TO ALL OIL, GAS, CASINGHEAD GAS, SHALE, COAL, PHOSPHATE, SODIUM, GOLD, SILVER AND ALL OTHER HYDROCARBONS, HYDROCARBON SUBSTANCES, METAL AND MINERALS, WHETHER METALLIC OR NON-METALLIC, TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES, BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY PART OF SAID LAND WITHIN 500 FEET OF SAID SURFACE," AS RESERVED IN THE DEED FROM PETER GIANNOTTI, EXECUTOR OF THE WILL OF VICTOR BALDOCCHI, DECEASED, RECORDED MARCH 21, 1972, BOOK 6612, PAGE 257, OFFICIAL RECORDS

2 "AN UNDIVIDED 1/2 INTEREST IN AND TO ALL OIL, GAS, CASINGHEAD GAS AND OTHER HYDROCARBON AND MINERAL SUBSTANCES BELOW A POINT 500 FEET BELOW THE SURFACE OF SAID LAND TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE, PASS THROUGH AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES, BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND," AS RESERVED IN THE DEED FROM TONY CUTINO, ET AL, RECORDED APRIL 4, 1978, BOOK 8776, PAGE 497, OFFICIAL RECORDS

497867

obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 4 of 14
DocMagic *eFerms* 800-649-1362
www.docmagic.com

Ca3005.mzd 4 tem

4978667

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.   **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.   **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

497887

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   6.  **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   7.  **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

   Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

---

Ca3005 mzd 6 tem

497867

8.    **Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan.  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property.  Lender's actions can include, but are not limited to:  (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument.  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease.  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.    **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect.  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender.  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect.  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance.  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve.  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance.  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                                 Page 7 of 14                 DocMagic *eFormus* 800-649-1362
                                                                                             www.docmagic.com

Ca3005.mzd 7 tem

497867

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

497867

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

497867

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd 10.tem

497867

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 11 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Ca3005.mzd 11.tem

497867

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

497867

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
SCOTT N. ZIMMERMAN           -Borrower                                               -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                               -Borrower


_____ (Seal)          _____ (Seal)
                            -Borrower                                               -Borrower


Witness:                                           Witness:

_____                  _____

Cs3005.mzd.13.tem

497867

State of California                    )
                                       ) ss.
County of CONTRA COSTA                 )

On Dec.20, 2004 before me, LINDA MOORE

personally appeared  SCOTT K. ZIMMERMAN

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



LINDA MOORE
COMM. 1487604
NOTARY PUBLIC - CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Expires Feb. 14, 2008

NOTARY SEAL

_____
NOTARY SIGNATURE

LINDA MOORE
_____
(Typed Name of Notary)

---

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 14 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

Cs3005.mzd 14 tem

Exhibit E

RECORDING REQUESTED BY
ALTERNATIVE FINANCING
CORPORATION

AND WHEN RECORDED MAIL TO
ALTERNATIVE FINANCING
CORPORATION
451 EL CAMINO REAL,
SUITE 205
SANTA CLARA, CALIFORNIA
95050
Loan Number: 04121406


CERTIFIED TO BE A TRUE AND
EXACT COPY OF THE ORIGINAL
NO... ...TITLE CO.
BY

——— [Space Above This Line For Recorder's Use] ———

# DEED OF TRUST

THIS DEED OF TRUST is made this    17th        day of DECEMBER, 2004
among the Trustor, SCOTT K. ZIMMERMAN, A MARRIED MAN AS HIS SOLE AND SEPARATE
PROPERTY

(herein "Borrower"), NORTH AMERICAN TITLE, 2530 SAND CREEK ROAD, BRENTWOOD ,
CALIFORNIA 94513

(herein "Trustee"), and the Beneficiary,
ALTERNATIVE FINANCING CORPORATION, A CALIFORNIA CORPORATION
, a corporation organized and
existing under the laws of  CALIFORNIA                                  whose address is
451 EL CAMINO REAL, SUITE 205, SANTA CLARA, CALIFORNIA 95050
(herein "Lender").

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants
and conveys to Trustee, in trust, with power of sale, the following described property located in the County of
CONTRA COSTA                                                      , State of California:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS
EXHIBIT "A".
A.P.N. #: 033-320-007

which has the address of 4042 MEADOWS LANE,   OAKLEY
                                    [Street]                        [City]

California  94561                    (herein "Property Address");
              [Zip Code]

CALIFORNIA-SECOND  MORTGAGE-1/80-FNMA/FHLMC  UNIFORM  INSTRUMENT                    Form 3805
Document Systems, Inc. (800) ___-____                    Page 1 of 7
Borrower Initials:

Csec1.dot

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated DECEMBER 17, 2004        and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 112,000.00        , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on JANUARY 1, 2035        ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional Lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

CALIFORNIA-SECOND  MORTGAGE-1/80-FNMA/FHLMC  UNIFORM INSTRUMENT                         Form 3805
Document Systems, Inc. (800) 649-1362                    Page 2 of 7
Borrower Initials:

Cause2.dcx

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and

Case3.dot

Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations, with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

   **12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

   **13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

   **14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

   **15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

   **16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

   NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

   **17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the nonexistence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

   If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice

Cias04.dot

to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgement enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver; Lender in Possession.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

**20. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligations.** Lender may collect a fee not to exceed $15 for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

---

CALIFORNIA-SECOND  MORTGAGE-1/80-FNMA/FHLMC  UNIFORM INSTRUMENT                    Form 3805
Document Systems, Inc. (800-649-1362)
Page 5 of 7
Borrower Initials:

Caeoc5.dot

24.   Attached Riders.
Prepayment Rider Attached hereto and made a part hereof

_____ REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE _____
UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action. In accordance with Section 2924B, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded                                                   , in Book               ,
Page                  , records of                                    County, (or filed for record with recorder's serial
number                                                                County), California, executed by

as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to

at

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

Signature: _____

CALIFORNIA-SECOND  MORTGAGE-1/80-FNMA/FHLMC  UNIFORM INSTRUMENT                    Form 3805
Document Systems, Inc. (800) 669-1362                                    Page 6 of 7
Borrower Initials:

Casec6.dot

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 7 of this Deed of Trust.

_____     -Borrower        _____     -Borrower
SCOTT K. ZIMMERMAN

_____     -Borrower        _____     -Borrower

_____     -Borrower        _____     -Borrower

State of California            }
County of CONTRA COSTA         }

On Dec. 20, 2004                    before me, LINDA MOORE
personally appeared SCOTT K. ZIMMERMAN

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

LINDA MOORE
COMM. 1457604
NOTARY PUBLIC - CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Expires Feb. 14, 2008

(Seal)

## REQUEST FOR RECONVEYANCE

TO TRUSTEE:
    The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated:                                    _____

CALIFORNIA-SECOND  MORTGAGE-1/80-FNMA/FHLMC  UNIFORM  INSTRUMENT          Form 3805
Document Systems, Inc. (800) 649-1362          Page 7 of 7

Case7.dot

## EXHIBIT "A" LEGAL DESCRIPTION

LOT 7, AS SHOWN ON THE MAP OF SUBDIVISION 6840, FILED JUNE 12, 1991, IN MAP BOOK 357, PAGE 27, CONTRA COSTA COUNTY RECORDS.

EXCEPTING THEREFROM:

1. "AN UNDIVIDED ONE-HALF (1/2) INTEREST IN AND TO ALL OIL, GAS, CASINGHEAD GAS, SHALE, COAL, PHOSPHATE, SODIUM, GOLD, SILVER AND ALL OTHER HYDROCARBONS, HYDROCARBON SUBSTANCES, METAL AND MINERALS, WHETHER METALLIC OR NON-METALLIC, TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES, BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND OR UPON ANY PART OF SAID LAND WITHIN 500 FEET OF SAID SURFACE," AS RESERVED IN THE DEED FROM PETER GIANNOTTI, EXECUTOR OF THE WILL OF VICTOR BALDOCCHI, DECEASED, RECORDED MARCH 21, 1972, BOOK 6612, PAGE 257, OFFICIAL RECORDS.

2. "AN UNDIVIDED 1/2 INTEREST IN AND TO ALL OIL, GAS, CASINGHEAD GAS AND OTHER HYDROCARBON AND MINERAL SUBSTANCES BELOW A POINT 500 FEET BELOW THE SURFACE OF SAID LAND TOGETHER WITH THE RIGHT TO TAKE, REMOVE, MINE, PASS THROUGH AND DISPOSE OF ALL SAID OIL, GAS, CASINGHEAD GASOLINE AND OTHER HYDROCARBON AND MINERAL SUBSTANCES, BUT WITHOUT ANY RIGHT WHATSOEVER TO ENTER UPON THE SURFACE OF SAID LAND," AS RESERVED IN THE DEED FROM TONY CUTINO, ET AL, RECORDED APRIL 4, 1978, BOOK 8776, PAGE 497, OFFICIAL RECORDS.

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA ☐ FHA | ☑ Conventional ☐ USDA/Rural Housing Service | ☐ Other (explain): | Agency Case Number | Lender Case Number 04121406 |
|---|---|---|---|---|---|

| Amount $ 448,000 | Interest Rate 7.125 % | No. of Months 360/360 | Amortization Type: | ☐ Fixed Rate ☐ GPM | ☑ Other (explain): ARM (type): 2Y 6M - INT ONLY |
|---|---|---|---|---|---|

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, ZIP) 4042 MEADOW LANE, Oakley, CA 94561  County: Contra Costa | No. of Units 1 |
|---|---|

| Legal Description of Subject Property (attach description if necessary) SEE PRELIMINARY TITLE REPORT | Year Built |
|---|---|

| Purpose of Loan | ☐ Purchase ☑ Refinance | ☐ Construction ☐ Construction-Permanent | ☐ Other (explain): | Property will be: ☑ Primary Residence ☐ Secondary Residence ☐ Investment |
|---|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost $ | Amount Existing Liens $ | (a) Present Value of Lot $ | (b) Cost of Improvements $ | Total (a+b) $ |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired 2004 | Original Cost $ 520,000 | Amount Existing Liens $ 517,820 | Purpose of Refinance Cash-Out/Home Improvement | Describe Improvements ☐ made ☐ to be made Cost: $ |
|---|---|---|---|---|

| Title will be held in what Name(s)  SCOTT ZIMMERMAN | Manner in which Title will be held Married Man as Sole and Separate | Estate will be held in: ☑ Fee Simple ☐ Leasehold (show expiration date) |
|---|---|---|

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|

## III. BORROWER INFORMATION

| | Borrower | Co-Borrower | |
|---|---|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) SCOTT ZIMMERMAN | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|

| Social Security Number 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 | Home Phone (incl. area code) 925-679-8808 | DOB (MM/DD/YYYY) 03/22/1945 | Yrs. School 18 | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☑ Married ☐ Separated | ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no.  ages | ☐ Married ☐ Separated | ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|---|---|

| Present Address (street, city, state, ZIP) ☑ Own ☐ Rent  10M No. Yrs. 4042 MEADOW LANE Oakley, CA 94561 | Present Address (street, city, state, ZIP) ☐ Own ☐ Rent  No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP) ☐ Own ☑ Rent  2 No. Yrs. 1201 LANDOVER Oakley, CA 94561 | Former Address (street, city, state, ZIP) ☐ Own ☐ Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower | |
|---|---|---|---|

| Name & Address of Employer ☑ Self Employed LAW OFFICE OF SCOTT ZIMMERMAN 812 FIRST STREET Brentwood, CA 94513 | Yrs. on this job 29 yr(s)  Yrs. employed in this line of work/profession 29 | Name & Address of Employer ☐ Self Employed | Yrs. on this job  Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business ATTORNEY AT LAW | Business Phone (incl. area code) 925-634-3571 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

| Name & Address of Employer ☐ Self Employed | Dates (from-to) | Name & Address of Employer ☐ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

Freddie Mac Form 65   01/04
Calyx Form 1003 Loanapp1.frm 01/04

Borrower

Co-Borrower

Page 1 of 4

Fannie Mae Form 1003   01/04

1   Rachel M. Dollar, CSB 199977
    SMITH DOLLAR PC
2   Attorneys at Law
    404 Mendocino Avenue, Second Floor
3   Santa Rosa, California 95401
    Telephone:  (707) 522-1100
4   Facsimile:  (707) 522-1101
    Email:  rdollar@smithdollar.com
5
    Attorneys for Defendant Aurora Loan Services, LLC,
6   erroneously sued as Aurora Loan Services,
    a Lehman Brothers Company
7

8                       UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10  SCOTT K. ZIMMERMAN, JUDY A.           CASE NO.:  C 08-3731 MHP
    ZIMMERMAN,
11                                        [PROPOSED] ORDER GRANTING MOTION
                              Plaintiff,  TO DISMISS COMPLAINT AND TO
12                                        STRIKE PUNITIVE DAMAGES
    v.
13                                        Judge:  Marilyn H. Patel
    AURORA LOAN SERVICES, A LEHMAN
14  BROTHERS COMPANY, a business entity;  Date:    October 6, 2008
    DIABLO FUNDING GROUP                  Time:    2:00 p.m.
15  INCORPORATED, a California corporation; Dept:   15, 18th Floor
    FIRST AMERICAN LOANSTAR, a business
16  entity form unknown; AND ALL PERSONS  Action Filed:  July 21, 2008
    UNKNOWN CLAIMING ANY LEGAL OR
17  EQUITABLE RIGHT, TITLE, ESTATE, LIEN
    OR INTEREST IN THE PROPERTY
18  DESCRIBED IN THE COMPLAINT
    ADVERSE TO PLAINTIFFS' TITLE OR ANY
19  CLOUD ON PLAINTIFFS' TITLE THERETO,
    and Does 1 through 50, inclusive,
20
                              Defendants.
21

22

23          The motion by Aurora Loan Services, LLC ("Aurora") to dismiss Plaintiffs' Complaint or in

24  the Alternative, to Strike Claims for Punitive Damages came on for hearing in Department 15 of

25  this Court on Octboer 6, 2008 at 2:00 p.m.  Rachel M. Dollar appeared on behalf of Aurora Loan

26  Services, LLC ("Aurora").   Scott Zimmerman appeared on behalf of Plaintiffs Scott and Judy

27  Zimmerman ("Plaintiffs").

28          After full consideration of the evidence, and the written and oral submissions by the parties,

                                        - 1 -

[Proposed] Order Granting Aurora's Motion to Dismiss or in the Alternative, to Strike the Punitive Damages Claim
from the Complaint.

1  the Court finds that Plaintiffs have stated no viable causes of action against Aurora and their

2  Complaint is hereby dismissed with prejudice.

3        In the alternative, Causes of Action _____ are hereby

4  dismissed with prejudice and Plaintiffs' claims for punitive damages are ordered stricken from the

5  Complaint.

6        THEREFORE IT IS ORDERED that the motion to dismiss Plaintiffs' Complaint with

7  prejudice is granted.  In the alternative, Causes of Action _____ are

8  hereby dismissed with prejudice and Plaintiffs' claims for punitive damages are ordered stricken

9  from the Complaint.

10 Dated: _____

11

12

13                                    By_____
                                        Honorable Marilyn H. Patel

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Proposed] Order Granting Aurora's Motion to Dismiss or in the Alternative, to Strike the Punitive Damages Claim from the Complaint.



1   Rachel M. Dollar, CSB 199977
    SMITH DOLLAR PC
2   Attorneys at Law
    404 Mendocino Avenue, Second Floor
3   Santa Rosa, California 95401
    Telephone:  (707) 522-1100
4   Facsimile:  (707) 522-1101
    Email:  rdollar@smithdollar.com
5
    Attorneys for Defendant Aurora Loan Services, LLC,
6   erroneously sued as Aurora Loan Services,
    a Lehman Brothers Company
7

8                     UNITED STATES DISTRICT COURT

9          NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10  SCOTT K. ZIMMERMAN, JUDY A.          CASE NO.:  C 08-3731 MHP
    ZIMMERMAN,
11                                       PROOF OF SERVICE RE MOTION TO
                Plaintiffs,              DISMISS COMPLAINT AND TO STRIKE
12                                       PUNITIVE DAMAGES; MEMORANDUM
    v.                                   OF POINTS AND AUTHORITIES IN
13                                       SUPPORT THEREOF; DECLARATION OF
    AURORA LOAN SERVICES, A LEHMAN       KATHY JARBOE IN SUPPORT THEREOF;
14  BROTHERS COMPANY, a business entity; PROPOSED ORDER
    DIABLO FUNDING GROUP
15  INCORPORATED, a California corporation; [FRCP 12(B) (6) AND (F)]
    FIRST AMERICAN LOANSTAR, a business
16  entity form unknown; AND ALL PERSONS Judge:  Marilyn H. Patel
    UNKNOWN CLAIMING ANY LEGAL OR
17  EQUITABLE RIGHT, TITLE, ESTATE, LIEN Date:    October 6, 2008
    OR INTEREST IN THE PROPERTY          Time:    2:00 p.m.
18  DESCRIBED IN THE COMPLAINT           Dept:    15, 18th Floor
    ADVERSE TO PLAINTIFFS' TITLE OR ANY
19  CLOUD ON PLAINTIFFS' TITLE THERETO,  Action Filed:  July 21, 2008
    and Does 1 through 50, inclusive,
20
                Defendants.
21

22

23          I am employed in the County of Sonoma, State of California.  I am over the age of 18 years

24  and not a party to the within action.  My business address is 404 Mendocino Avenue, Second Floor,

25  Santa Rosa, California 95401.  On August 26, 2008, I served the attached NOTICE OF MOTION

26  AND MOTION TO DISMISS COMPLAINT AND TO STRIKE PUNITIVE DAMAGES;

27  MEMORANDUM  OF  POINTS  AND  AUTHORITIES  IN  SUPPORT  THEREOF;

28  DECLARATION OF KATHY JARBOE IN SUPPORT THEREOF; PROPOSED ORDER

on the parties to this action by serving:

Scott K. Zimmerman                              Attorney for Plaintiffs
Law Offices of Scott K. Zimmerman               Telephone: (925) 634-3571
613 First Street, Suite 202                     Facsimile: (925) 634-0781
P.O. Box 1120                                   Email: skzlaw@pacbell.net
Brentwood, CA 94513

    / / **BY U.S. MAIL:** I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at Santa Rosa, California, following ordinary business practices. I am readily familiar with the practice of Smith Dollar PC for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

    // **BY PERSONAL SERVICE:** I caused each such envelope to be delivered by hand to the addressee(s) noted above.

    // **BY FACSIMILE:** Based on a court order or an agreement of the parties to accept service by fax transmission, I caused the said document(s) to be transmitted by fax to the persons listed above. The transmission(s) was reported as completed and without error and was properly issued by the transmitting facsimile machine.

    /X/ **BY FEDERAL EXPRESS/OVERNIGHT MAIL:** I caused the above-described document(s) to be served by Federal Express or via overnight delivery to the offices of the addressee(s).

    // **BY EMAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the persons at the e-mail addresses listed above. No electronic message or other indication that the transmission was unsuccessful was received within a reasonable time after the transmission.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August 26, 2008



_____
Sheila M. Force



Proof of Service of